## HUDSON *against* PORTER.

Where *A* leased to *B*, in the month of *April*, a farm, for one year, "privileged to sow not over ten acres of rye, the crop from which, if threshed on the farm, the straw to remain for the benefit of the farm;" *B*, in the *Autumn* of that year, sowed about nine acres of the farm with rye; at the end of the year, he gave up the possession; and in *August* following, he entered and reaped the rye thus sown by him; in an action of trespass *quare clausum fregit*, brought by *A* against *B*, for such acts, it was held, that by a fair construction of the lease, *A* was entitled to the entire use of the farm for one year, and might raise thereon any crop, not inconsistent with good husbandry, which would come to maturity within that period, with the further privilege of sowing not exceeding ten acres of *Winter* rye, to be gathered after the expiration of the term, and removed from the farm, or threshed upon it, leaving the straw, at the option of the tenant; and that consequently, the plaintiff could not recover.

THIS was an action of trespass *quare clausum fregit;* tried at *Tolland, April* term, 1838, before *Waite,* J.

On the trial, the plaintiff introduced a witness, who testified, that, in *August,* 1836, the defendant entered upon the plaintiff's farm described in the declaration, and then in his possession, and reaped about six acres of rye standing thereon; that the farm had been occupied, by the defendant, from the *Spring* of 1834 to the *Spring* of 1836; and that the rye reaped by the defendant was part of eight or nine acres, which were sown by him, in the *Autumn* of 1835, while he was in possession of the farm: that in the *Autumn* of 1834, the defendant sowed upon the farm about nine acres of *Winter* rye, which was gathered by him the *Summer* following. This was all the evidence offered by the plaintiff.

The defendant thereupon offered in evidence a lease of indenture from the plaintiff to him, of the farm described in the declaration, for one year from the 9th of *April,* 1834, with a renewal of it, for one year, after its expiration, indorsed thereon. Among other stipulations in the lease, was the following: "The lessee to be privileged to sow not over ten acres with rye; the crop from which, if threshed on the farm, the straw to remain for the benefit of the farm."

The plaintiff objected to the admission of such lease and renewal in evidence, claiming that they gave no authority whatever to the defendant to enter upon the farm and take the rye after the expiration of the year specified in the renewal.

The court overruled the objection, and admitted the evidence offered.    The jury returned a verdict for the defendant; and the plaintiff moved for a new trial.

*I. Perkins,* in support of the motion, contended, That the lease, taking the original and renewal together as one instrument, did not conduce to prove a right of entry upon the land, by the defendant, after its expiration on the 9th of *April,* 1836, and after he had given up the possession of the farm to the plaintiff.

*Waldo,* contra, insisted, That by the provisions of the lease, the defendant was authorized to do the acts complained of, after the expiration of the year.

In the first place, the lease gave the defendant a *privilege* in the sowing of the rye.    But it was clearly no privilege to the defendant to sow any sort of rye, which he would not be entitled to reap.    Nor would it be a *privilege* to him to sow *Summer* rye, in preference to any other *Summer* crop.    It would rather operate as an advantage to the plaintiff, and a disadvantage to the defendant; for the parties have stipulated, that if the rye is threshed on the farm, the straw is to remain for the benefit of the farm.

Secondly, if the parties intended *Summer* rye only, why did they contemplate its being threshed elsewhere?    It is absurd to suppose, that the parties intended that the defendant should sow *Summer* rye, harvest it during the term, and carry it off the farm for the purpose of threshing it.

Thirdly, the parties have given a practical construction of this contract in conformity with the claim of the defendant. The farm was first leased *April* 9th, 1834, for one year; and the defendant went into immediate possession under the lease. By virtue of the privilege therein given him, he sowed upon the farm, in the *Autumn* of 1834, about 9 acres of *Winter* rye, which was gathered by him, the *Summer* following; and it does not appear, that he sowed any other rye upon the premises.    On the 9th of *April,* 1835, the lease was renewed, for one year, upon the same terms as before; the crop of *Winter* rye, previously sown, being then upon the ground.    Had it been the understanding of the plaintiff that *Summer* rye only was to be raised, he should then have interposed his objections

to the conduct of the defendant, and not have induced the de- *Tolland,*<br>August, 1838.
fendant to sow a crop for himself to reap.

Hudson<br>*v.*<br>Porter.

Fourthly, if the lease authorized the defendant to sow the grain in question, he was entitled to reap it, although the lease had expired, and he had given up the possession of the farm. This has not been, and probably will not be, controverted.

WAITE, J. The plaintiff in this case charges the defendant with a trespass in entering upon his farm, and reaping a crop of rye. The grain had been sown, the preceding year, by the defendant, while he occupied the farm under a lease from the plaintiff. He claims the right to enter and gather the crop, in pursuance of the authority to sow it, contained in the lease. This authority is denied by the plaintiff. The words in the lease upon which the defendant relies, are, " privileged to sow not over ten acres of rye, the crop from which, if threshed on the farm, the straw to remain for the benefit of the farm."

There are two kinds of rye known to our farmers; one of which is sown in the *Autumn,* and the other in the *Spring.* And the question arising upon this clause in the lease, is, which of the two kinds was intended. If the former, it is not denied but that the tenant might lawfully enter and gather the crop after his term had expired, because it was one that could not be sown and harvested within the year specified in the lease. If the tenant had express authority to sow it, he had implied authority to gather it.

But it is insisted, that the latter kind was intended, because it was a crop that might be raised within the year, and the lease says nothing of any occupation by the tenant after that period.

*Winter* rye is the kind most commonly raised in this state, and is generally esteemed by far the most profitable. *Summer* rye is seldom raised, and is rarely considered a valuable crop. From the general use of the former, and the limited cultivation of the latter, we are inclined to believe, that by the use of the term "rye" alone in the lease, our farmers would understand it as meaning *Winter* rye; and if the other kind was intended, a more specific description would be required.

But it is not necessary to place the case upon that ground; for there are other expressions in the lease, that more clearly

*Tolland,*
August, 1838.

Hudson
*v.*
Porter.

indicate the kind intended. In the first place, there is no restriction placed upon the tenant with respect to the cultivation of any other *Summer* crop, except what may arise from the obligation to improve the farm according to the rules of good husbandry. He was at liberty to plant corn and potatoes, and sow barley, oats and *Summer* wheat, as he pleased ; and we can discover no sufficient reason for a restriction as to the cultivation of one *Summer* crop, and not of the others. But if *Winter* rye was intended, it was very proper that he should be restricted as to the quantity of ground he might sow, that the landlord might not be prejudiced in the occupation of his farm the succeeding year.

Again, the right to sow rye is spoken of as a *privilege.* It is difficult to see how it could be such, if the tenant was merely *restricted* in the use of the farm during the term. But if it was intended to authorise him to sow that which would not come to maturity within the year, but must be gathered afterwards, then the grant would indeed be a privilege, which the tenant would not have without that clause in the lease.

Further, it is provided, that if the crop is *threshed* upon the farm, the straw shall remain for the benefit of the farm. What difference could it make with the landlord whether a *Summer* crop was threshed, during the term, upon the farm, or elsewhere ? And why should he require that the straw should remain, in the one case, and not in the other ? And again, why this stipulation with respect to the straw of rye, and not of oats and barley ? The tenant had the entire use of the farm during the year, and could thresh his other grain where he pleased, and dispose of the straw as he thought proper.

But if the tenant had the privilege of raising a crop which he might wish to store and thresh upon the farm, after his term expired, it might be reasonable that the landlord should receive some remuneration for the trouble and inconvenience occasioned thereby ; and the straw of the crop might not be more than a fair equivalent. At any rate, it was optional with the tenant to take benefit of that stipulation, at the price agreed, or carry the crop from the farm and thresh it elsewhere.

Upon the whole, we think the fair construction of the lease is this ; that the tenant was to have the entire use of the farm for one year, and might raise thereon any crop, not inconsistent with good husbandry, which would come to maturity with-

in that period, with the further privilege of sowing not exceeding ten acres of *Winter* rye, to be gathered after the expiration of the term, and removed from the farm or threshed upon it, at a stipulated price,—at the option of the tenant.

<div style="text-align: right">

*Hartford,*
June, 1839.

</div>

We are, therefore, of opinion, that the decision of the judge on the circuit was right, and that no new trial should be granted.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.

<div style="text-align: center">

New trial not to be granted.