## Rapp *against* Palmer.

If a common carrier by whom goods are sent to A, sells them to B, such sale vests no title. To take a case out of the operation of this principle, on the ground of usage of trade, it must be an usage which has every requisite to give it validity : it must be ancient, certain, uniform and reasonable.

THIS was an action of *trover*, brought in the common pleas of *Alleghany* county, by the defendants in error against Frederick Rapp. Palmer and Mills were merchants residing at Parkersburg, Virginia, on the Ohio river. They employed one Blinn, who had charge of a keel boat, to carry a quantity of corn, to be delivered to Hugh M'Shane at Pittsburgh. Blinn, instead of delivering the corn, agreeably to contract, at Pittsburgh, sold it on the way to the defendant below, or his agent, at Economy, who contended that by this purchase, without notice of the plaintiff's title, the property was vested in himself. On the trial, a variety of testimony was produced in relation to the custom of trading along the Ohio river. The testimony was somewhat contradictory, and left the question unsettled, whether it was the general custom of freighters and owners of boats to buy and sell produce at the different towns along the river ? The fact however was established that it was, at least, a very common practice.

The court below charged the jury that this case was governed by the decision of the supreme court in the case of Lecky *v.* M'Dermott, 8 *Serg. & Rawle* 500 : and that if they believed Palmer and Mills were the owners of the corn sold by Blinn, they were entitled to recover, notwithstanding Rapp's agent, under the circumstances proved by the witnesses, made the purchase without any knowledge of Palmer and Mills's right of property.

The error assigned was to this charge of the court.

*Forward*, for plaintiff in error, admitted the general principle that a carrier cannot sell goods with which he is entrusted. But this case is an exception, and does not fall under the rule of *caveat emptor* laid down in Lecky *v.* M'Dermott, 8 *Serg. & Rawle* 500. There may be cases in which the owner may be accessary to the fraud of the carrier. Here the corn was in open barrels and in the car ; and in these respects, came under the denomination of marketing. It was sold in one of the markets on the river ; for every town along the river is a market place. Boats are in the practice of trading at these towns ; and sales are made at them, just as sales are made at the markethouse in Pittsburgh. It is admitted there is no market overt in Pennsylvania. But the principle is well established, that if

property be sent to a place where such things are usually sold, the purchaser will hold. Shaw et al. *v.* Levy, 17 *Serg. & Rawle* 99. Where goods are sent in such a way as to show an apparent purpose of sale, a special agent may bind the principal by a sale. It is understood that goods delivered to a carrier on the Ohio, such as corn, vegetables, &c. are delivered for sale. Blinn then had, from the ordinary course of trade, an implied authority to sell. Hence this case is different from that of Lecky *v.* M'Dermott.

*Fetterman,* for the defendants in error, was stopped by the court.

The opinion of the Court was delivered by

Rogers, J.—I cannot perceive any essential difference between this case and Lecky *v.* M'Dermott, 8 *Serg. & Rawle* 500. The principle, that if a wagoner, who is a common carrier, by whom goods are sent to deliver to A, sell them to B, the sale vests no property in the purchaser, is thought to be so plain that it is difficult to render it plainer by argument. But it is said that this is an exception, on the ground of a supposed usage of trade on the rivers Ohio and Mississippi. To take a case out of the operation of a general principle, a usage should have every requisite to give it validity. It must be ancient, certain, uniform and reasonable.

And although a usage is often resorted to for explanation of commercial instruments, it never is, nor ought to be, received to contradict a settled rule of commercial law. Frith *v.* Barker, 2 *Johns. Rep.* 335. But what is the extent of the usage proved by the witnesses? It is, that persons are in the habit of carrying produce, such as corn, flour, &c. up and down the Mississippi and Ohio rivers; that a great amount is so sold; that they load their own boats and deal in the manner mentioned; that immense quantities are sold at the wharves by persons having charge of them; that this trade is going on at all seasons when the river is navigable, very often in flat boats descending, and keel boats ascending the river. Captain Stone, who has been employed as a captain of a boat on the Ohio, also says, that the freighter frequently authorizes the captain to sell at the towns along the river, but that when not authorized to sell, they must deliver the goods to the consignee at the place of destination. We can readily suppose that a trade of this description would be carried on on the margin of the rivers; nor is it peculiar to the rivers in the interior, but also extends to the rivers on the sea board. Still this has never been supposed to form an exception in the case of a common carrier, so as to authorize him to sell goods entrusted to him for an entirely different purpose. Blinn undertook to carry, for hire, the produce in question to the city of Pittsburgh. In violation of his trust he sells the property to the agent of the defendant, under circumstances which the agent acknowledges awakened his suspicions. The case itself shows the danger of relaxing the rule of law. Let it once be ruled that boatmen on our rivers and canals can vest a

[Rapp v. Palmer.]

title in a vendee of goods entrusted to their care, and there will be an end to all security to the owners.   Even as it is, frauds have already been practised to a great extent in the sale of the article of coal on the Schuylkill canal, very much to the detriment of the trade.   The rule of the common law is *caveat emptor*, and unlike the civil law, the possession of goods is but *prima facie* evidence of title, with some exceptions, which will be now noticed.   I fully subscribe to the doctrine that an agent may bind his principal within the limits of an authority with which he has been apparently clothed by the principal in respect to the subject matter.   If a principal send a commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale.   Thus if the owner of a horse send it to a repository of sale, it must be intended that he sent it there for sale.   Or if one send goods to an auction room, it cannot be supposed that he sent them thither merely for safe custody. When the article is sent in such a way, and to such a place, as to exhibit an apparent purpose of sale, the principal will be bound.   In the cases referred to, the person and the place both indicate the nature of the business carried on.   It would be a fraud on the purchaser, against which he could not guard himself with any ordinary care, which the depository was enabled to commit by the unwise conduct of the owner; it would therefore be but just that he should bear the loss.   But is that the case here ?   The plaintiff entrusted his goods to a common carrier, whose ordinary business it is to carry produce, such as flour, corn, &c. on freight.   What then is there here from which you can cast upon the freighter the imputation of carelessness or want of care.   It has not been proved, even if that would take the case out of the rule, that Blinn was the owner of the boat, and as such was in the habit of trading in the manner mentioned by the witnesses.   Blinn was a common carrier, known to be such, and of course subject to all the rules which govern common carriers.   There is nothing therefore which dispenses with the well known principle, *caveat emptor*.   The goods were sent according to the well known course of trade.   If a person choose to purchase goods from a common carrier, he does so at his peril.   It has been thought wise by the sages of the law, to throw the risk of title rather on the vendee than the owner; and of the wisdom of the rule this case is a strong illustration.   A contrary principle would increase the risk of the owners, without adding much to the security of *bona fide* purchasers.

Judgment affirmed.