## Daniel J. Foley and John T. Woodside, *vs.* William Mason & Son, use of Birckhead and Pearce.

A legal plaintiff on the record, as a general rule, is not a competent witness to prove any issue in the pending controversy, he being in all cases *prima facie* liable for costs equally with the equitable plaintiff, which fact alone is sufficient to disqualify him on the ground of interest, but he may be divested of this interest so as to be made competent.

The right to swear a witness on his *voir dire* clearly belongs to the party objecting to his testimony, and it is error to permit the party who calls him so to swear the witness.

The discharge of a party who was a legal plaintiff on the record, under the insolvent laws, is not sufficient to divest him of his interest in the suit so as to render him a competent witness.

Where goods are sold for cash, yet if the delivery is unconditional and without fraud or mistake, the title thereby vests in the vendee, notwithstanding the cash was not in fact paid.

Evidence of usage is never admissible to vary or contradict the clear and manifest signification of the terms used by the contracting parties to express

their meaning, nor to oppose or alter a general principle or rule of law, and upon a fixed state of facts to make the legal rights or liabilities of the parties, other than they are by the common law.

In any case a usage to be admissible must be proved to be known to the parties, or be so general and well established that knowledge and adoption of it may be presumed, and it must be certain and uniform.

Where a sale of goods is made for cash, and they are delivered to the vendee upon the condition of payment in cash, an offer by the vendee to pay in the vendor's own over-due notes, is a virtual compliance with the condition, and equivalent to a tender of payment in cash.

A creditor's note may be set-off or pleaded in discount by his debtor, though the latter may have obtained possession of the note at a discount and with a view to the set-off, after he became indebted to his creditor.

The only difference between a *cash* and a *credit* payment, is, that the former must be made at the time of sale or delivery, and the latter after the credit has expired: each must be made in the same way, and there is no more reason why the former should be made *in money*, than the latter.

Appeal from the Superior Court of Baltimore City.

*Trover* by the appellees against the appellants, to recover the value of certain goods alleged to be illegally held by the defendants. The suit was begun on the 3rd of September 1849, and was entered for the use of Birckhead and Pearce, on the 14th of January 1851. Plea *non cul.*

1st *Exception.* It was admitted that William Mason, and William Mason, Jr., two of the legal plaintiffs, applied for the benefit of the insolvent laws, on the 5th of November 1849, and were finally discharged thereunder, and that McKim and Kennedy were their trustees and had bonded as such. The plaintiffs then offered William Mason as a witness for their *cestui que use*, but defendants objected to his admissibility, because he was a party plaintiff on the record and liable for costs. The plaintiffs then proposed to swear the witness on his *voir dire*, but defendants objected to his being so sworn. The court (Frick, J.) overruled this objection, and the witness was then examined and sworn on his *voir dire*, and said that he was not interested in the event of the suit, and would not lose or gain thereby. The court then permitted him to be sworn in chief and the defendants excepted. In the course of the trial William Mason, Jr., was also offered

as a witness by the plaintiffs, and to his admissibility the defendants also objected on the same grounds as stated above, which objection the court also overruled, and it was agreed that the question as to his admissibility should be decided under this exception.

*2nd Exception.* The plaintiffs then proved by said William Mason, that in July and August 1849, the defendants purchased a quantity of cotton duck from the firm of William Mason & Son, of which witness was a member, for cash; that the duck was delivered without any demand of the payment at the time. The witness further said "that when he sells for cash, he delivers the article without the cash, if he considers the purchaser good for the money, and honorable; that this is the custom, the usage; that his right to the cash was not waived." A few days afterwards, when Mason & Son sent to defendants for payment, the latter offered to pay, in part, with the promissory notes of Mason & Son, past due, and the balance in cash, which offer was several times repeated and declined by the plaintiffs. The ownership and possession of the property by Mason & Son, was then proved by William Mason, Jr., whose testimony was excepted to as stated in the first exception. The defendants then offered in evidence an assignment by the firm of Mason & Son, of all their property, debts and claims, including the claim against defendants, subject however to the claim of Birckhead and Pearce to McKim and Kennedy, for the benefit of their creditors, dated 8th of September 1849; and then asked the following instructions to the jury.

1st. If any part of the duck in controversy was the property of the legal plaintiffs, and in their possession when it was delivered to the defendants, under the agreement of sale mentioned in the evidence, then the legal plaintiffs had the right to sell and deliver said duck to defendants.

2nd. If defendants bought the duck in question from the legal plaintiffs, then the plaintiffs cannot recover, unless the jury believe that defendants obtained possession of it by false and fraudulent representations.

Foley & Woodside, *vs.* Mason & Son, use of Birckhead & Pearce.

3rd. If the duck was purchased by defendants, and delivered to them by the plaintiffs, without any fraudulent and false representations, made by defendants to obtain possession thereof, then the right of property in it passed to defendants, and the plaintiffs cannot recover in this form of action.

4th. If the plaintiffs in fact delivered the goods in question to defendants, under the contract of sale mentioned in the evidence, without a demand for the cash at that time, the defendants had a legal right to pay for them in the notes of the plaintiffs, and that the intention and offer of defendants to pay the plaintiffs in the notes mentioned in the evidence, did not authorise the plaintiffs to disaffirm the contract and sue in trover.

5th and 6th. These prayers, which denied the plaintiffs' right to recover, because they had parted with their legal rights in this case, by the assignment to McKim and Kennedy, or by their application for the benefit of the insolvent laws, were abandoned in argument in this court.

The plaintiffs then asked the court to instruct the jury as follows :

1st. If the jury find from the evidence that defendants purchased from the plaintiffs the duck in question for cash, and that plaintiffs delivered it to the defendants without demanding the cash simultaneously with such delivery, and that there is a usage amongst merchants in the city of Baltimore, to deliver to purchasers merchandise sold for cash, without demanding the cash to be paid simultaneously with such delivery, without the vendor thereby waiving his right to such cash payment under the contract of sale, and that the plaintiffs in the delivery of said duck, without at the same time demanding such cash payment, acted with a view to such usage, and did not intend to waive such cash payment secured under their said contract of sale, and that after said delivery the defendants refused to pay cash for said duck, and have not yet paid it, and that the plaintiffs upon such refusal demanded the delivery of said duck to them, and that upon such demand the defendants refused to deliver it, then the plaintiffs are entitled to recover in this case.

Foley & Woodside, *vs.* Mason & Son, use of Birckhead & Pearce.

2nd. If the jury believe from the evidence, that the defendants purchased the duck in question for cash, and at the time of such purchase did not intend to pay cash for it, but intended to deceive and defraud the plaintiffs, and that such intention was not known to the plaintiffs at or before its delivery, then the plaintiffs are entitled to recover in this case.

The court granted the plaintiffs' prayers, and also the first prayer of the defendants, but rejected their second, third, fifth and sixth prayers, and also their fourth prayer, because in the opinion of the court the goods may have been so delivered in reference to the usage, which is the ground of the plaintiffs' prayer, and may not in fact have been intended as an unconditional delivery, nor is it necessary that he should have in his mind, at the time, any particular intention not to waive. The defendants excepted, and the verdict and judgment being against them appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*T. P. Scott and John V. L. McMahon,* for the appellants.

1st. The first exception relates to the admissibility of the evidence of the Masons, which is the whole evidence in support of the plaintiffs' case, and presents the question, *first,* whether a legal plaintiff on the record is a competent witness for the *cestui que use.* We say he is not, because he is liable for costs, *non obstante* his application for the benefit of the insolvent laws and the entry for the use. 7 *Gill,* 240, *Selby vs. Clayton. Ibid.,* 406, 416, *Owings use of Green, vs. Emory & Gault.* 5 *How.,* 95, *Bridges, et al., vs. Armour, et al.* But it is supposed that the fact that William Mason was sworn on his *voir dire,* and his saying that he had no interest in the result of the suit restores his competency. But the right to swear a witness on his *voir dire,* belongs to the party *objecting* to his testimony, and not to the party calling the witness. 1 *Cowen's Philip on Ev.,* 131. The plaintiffs here call a witness who stands upon the record confess-

edly incompetent, and then offer to swear him upon his *voir dire* to remove his incompetency. This cannot be done, they cannot call an incompetent witness to give evidence to remove his incompetency. The witness cannot, by all that he has said or could say, remove his liability for costs. But the other witness, William Mason, Jr., was never sworn on his *voir dire*, and he stands confessedly covered with the objection of interest.

2nd. The second exception relates to the granting of the plaintiffs' prayers, and the rejection of the defendants' 2nd, 3rd and 4th prayers, and presents two separate and independent questions : 1st of *usage* and 2nd of *fraud*. On these we insist, 1st, that in the absence of any usage, even though the sale was for cash, the unconditional delivery under the sale, obtained without fraud, vested the title to the goods in the defendants. The unconditional delivery waives the conditional sale. All the books agree that this is undoubted law. 9 *G. & J.*, 277, *Powell vs. Bradlee.* 6 *Cowen*, 110, 113, *Chapman vs. Lathrop.* 8 *Wend.*, 256, *Furniss vs. Hone.* 3 *Sandford*, 208, 210, *Smith vs. Lynes.* Again, the *burthen of proof* is on the vendor to show that the delivery was conditional, and this can only be done by proof that the delivery was upon a condition agreed upon or understood by *both parties* at the time. A mere mental reservation will not do. 1 *Selden*, 44, 45, 46, *Smith vs. Lynes.* 4 *Pick.*, 451, *Whitwell vs. Vincent.* 1 *Eng. C. L. Rep.*, 257, 258, *Ogle vs. Atkinson.* The proof in this case shows that there was no express declaration made, at the time of delivery, of any condition, the presumption therefore is, that it was an unconditional delivery.

2nd. As to the alleged usage. This doctrine of usage is one of great inconvenience and lamented by all the judges. 1 *Sandford*, 137, *Hone vs. Mutual Safety Ins. Co.* 43 *Law Lib.*, 417, 418. But proof of usage, if admissible at all, to control by its silent operation, contracts and acts under them, not made or done with express reference to it, must be of an usage so general, certain and uniform, and well established,

as to be presumed to be known to and acted under by the parties, and if available to control the effect of the unconditional delivery, it can only so avail upon the assumption that both parties acted with reference to it, in receiving as well as in making the delivery. Now what is this *thing* called usage, in this case? The witness says he delivers the article without the cash, only when he *considers the purchaser good.* This is not a usage, which must be something *fixed, certain* and *universal.* 3 *Sandford*, 212. A usage which differs upon the action of each particular person is no usage. One man may think the purchaser good, when his next neighbor may think otherwise, and this is said to be a usage! General usages the courts take notice of, but particular usages must be proved to be uniform, general and certain, or that the party had actual knowledge of it. The latter is not pretended. Now how are you to make out presumed knowledge? You must bring home knowledge of the usage by proof of the usage, (43 *Law Lib.*, 415,) and the jury must find it. In this case there is no such proof of the usage as there was in *Powell vs. Bradlee.* Nor was it so put to the jury as in that case. There is no proof whose usage it was, or where it was the usage, whether in Baltimore or in New York. In *Powell vs. Bradlee*, the usage was proved to be confined to sales of flour and cotton within the city of Baltimore, and was general and notorious. In all these points that case differs from this. But that case does not decide, that where usage is proved you need not prove the acts of the parties under it, or of but one of them. On the contrary the court in that case concede that the fact of usage found is not enough, and that the court below were right in putting to the jury to find the acting of the parties under it. The law does not make the usage a part of the contract. There must be in the minds of both the parties a knowledge of the usage, and they must both act in reference to it. 2 *Kent*, 497. 43 *Law Lib.*, 414, 417, 418. 1 *Sandford*, 149, *Hone vs. Mutual Safety Ins. Co.* 9 *Pick.*, 196, *Salem Mill-dam Corp., vs. Ropes.* 2 *Wend.*, 501, 504, *Wood vs. Hickok.* 9 *G. & J.*, 221, 230, 239.

How does the usage act upon the delivery? The law does not apply it. You cannot do it by the act of one of the parties, for it is impossible that the act of one can divest the title of the other, under an unconditional delivery.

3rd. As to the question of fraud. The plaintiffs' second prayer, which raises this question, makes no reference whatever to the question of usage. It presents only the case of an unconditional delivery, not obtained by any fraudulent representation, and the effect of the alleged undivulged intention of the purchasers in vacating the sale and delivery. There is not a tittle of evidence of any fraud in the case, unless the design of the defendants to pay the plaintiffs in their own over-due notes could be imputed to them as a fraud in law. The prayer is based on the *unconditional* delivery of the goods. If this be so the right to the cash payment was gone, was waived, was abandoned, and this gave us a clear right to set off the notes, or any thing else. The principle we maintain is, that the doctrine of fraud should not be carried further than it is in the case of *Powell vs. Bradlee*. The cases say there must be some fraud *conducing* to the contract. The case in 1 *Greenleaf's Rep.*, 376 to 394, *Cross vs. Peters*, puts the test, would an action of *deceit* at common law lie for the act influencing the contract. The fraud must be acted out. 21 *Penn. State Rep.*, 367. 2 *Eng. C. L. Rep.*, 25, *Noble vs. Adams.* 1 *Selden*, 44, *Smith vs. Lynes.* 6 *Cowen*, 113, *Chapman vs. Lathrop.* 1 *Chitty's Gen. Pr.*, 666. 9 *G. & J.*, 277. 1 *East.*, 375, *Eland vs. Karr, et al.* But the offer to pay in the over-due notes of the vendor, is equivalent to an offer to pay in ready money. 8 *Eng. C. L. Rep.*, 330, 331, *Nayer vs. Nias.* 22 *Do.*, 383, 385, *McGillivray vs. Simson.* 2 *Maule & Selw.*, 510, *Cornforth vs. Rivett.* 13 *Ves.*, 180, *Taylor vs. Okey.* 2 *H. & J.*, 77, *Clarke vs. Magruder.* The fraud, if any, was in the plaintiffs, in refusing such payment. The delivery was obtained without any fraudulent pretexts whatever, and the vendees had the right to get any legal advantage they could.

Foley & Woodside, *vs.* Mason & Son, use of Birckhead & Pearce.

*J. N. Steele* for the appellees.

1st. There is no error in the first exception, because the witness had, in fact, no interest whatever in the result of the suit, and having no such interest, the mere fact that he was a party to the record, did not, of itself, render him incompetent to testify. 3 *Gill,* 431, *Lizardi vs. Cohen.* 7 *Gill,* 240, *Selby vs. Clayton.* 3 *H. & McH.,* 152, *Beard vs. Cowman. Peter's C. C. Rep.,* 301, *Willings vs. Consequa.* 3 *Binney,* 312, *Steele vs. Phœnix Ins. Co.* 7 *Cowen,* 358, *Chaffee vs. Thomas.* 17 *Pick.,* 272, *Pond vs. Hartwell.* 6 *H. & J.,* 172, *Bank of Columbia, vs. Magruder.* 4 *H. & McH.,* 342, *Peter vs. Beall.* The entry for the use of Birckhead and Pearce, was an absolute assignment of the whole judgment. The inquiry then is, whether the liability for costs renders him incompetent? He swears positively that he would not gain or lose by the result of the suit. This testimony is in, unobjected to, and refers as well to his liability for costs as to his interest in the suit. The liability for costs is only a fact from which an interest in the suit may be inferred, and may be explained by testimony. There can be no doubt that this want of interest may be proved by parol. If funds are deposited in court sufficient to cover the costs, it will render the witness competent, as some of the cases above cited show. But it is said, the court had no right to swear the witness on his *voir dire,* at the instance of the party calling him. Why should he not be so sworn? It was a question of fact for the decision of the court alone. It was not the case of evidence *aliunde,* on the part of the objector, showing an interest, and then calling the witness to contradict it. But even if he was improperly sworn on his *voir dire,* this court has no right to decide the question, because the record does not raise it. The exception is only taken to his being sworn in chief. There are two distinct exceptions, the last of which only is signed, and the former therefore is no exception. 1 *Md. Rep.,* 13, *Milburn vs. The State.*

2nd. The only question upon the second exception is, whether there was *any evidence* to go to the jury from which a rational mind could infer the existence of the usage? The

error in the argument on the other side is, in not distinguish-
ing between the sufficiency in law, and the sufficiency in fact,
of the evidence. The first question is not before this court.
There is evidence in the cause of the usage relied on, and
the proper question to be submitted to the jury, if they found
such usage, was, whether the plaintiffs acted with a view to
the usage, and did not intend to waive their right to the cash?
The binding effect of usage is stated in strong terms, in 1
*H. & G.*, 239, *Bank of Columbia, vs. Fitzhugh.* The very
question here presented is decided, 9 *G. & J.*, 247, 277, 278,
*Powell vs. Bradlee.* When the usage is proved, the law pre-
sumes that the parties knew it, and that they acted in refer-
ence to it. The doctrine that both parties must intend to act
in reference to the usage cannot be sustained. If such be
the law, the doctrine of usage would be presented in a very
strange light. If the vendee receives, with the intention that
the cash payment shall be *waived*, the usage would be con-
troled, and the intention of the vendor would be controled.
But this point is settled by the case of *Powell vs. Bradlee.*
So in 1 *Selden*, 44, and 3 *Sandford*, 208, cited on the other
side.

3rd. As to the question of fraud. I say that if the defend-
ants, when they made the purchase for cash, did not intend to
pay cash, and this fraudulent intention remained unknown to
the plaintiffs until after the delivery of the goods purchased,
then this purchase was a fraud upon the plaintiffs, and as against
them the subsequent delivery of the goods, without knowl-
edge of the fraud, passed no title to the defendants. The
notes of the plaintiffs were over-due. The firm was then in
failing circumstances. These defendants then go to the
plaintiffs to buy goods for cash and offering to pay in cash,
with the intention at that very time to buy up, and pay, in
plaintiffs' over-due notes. They go then with a lie in their
mouths, and effect a purchase by means of this lie. This
surely is a fraud. 9 *G. & J.*, 248. 10 *G. & J.*, 226, *Harris
vs. Alcock.* These cases show, that when a party effects a
purchase for cash without an intention to pay cash, it is a

cheat and a fraud. See also 1 *Story's Eq.*, *secs.* 186, 192, and *Chitty on Contracts*, 406. *Story on Contracts*, sec. 165. The case in 20 *Eng. C. L. Rep.*, 237, *Irving vs. Motley*, explains the case of *Noble vs. Adams*, and removes the idea, that nothing short of obtaining goods under false pretences will vacate a bargain. The cases all show, that if there was an intent not to pay cash when the parties bought for cash, it is a fraud.

Mason, J., delivered the opinion of this court.

This is an action of *trover*, to recover the value of certain goods alleged to be illegally held by the defendants.

The plaintiffs' whole case rests upon the testimony of the two Messrs. Mason, who are the *legal plaintiffs* upon the record. These witnesses were objected to, and if their testimony is deemed inadmissible, the plaintiffs have no case in court.

As a general rule, the legal plaintiff on the record, is not a competent witness to prove any issue in the pending controversy. The legal plaintiff in all cases is, *prima facie*, liable for costs equally with the equitable plaintiff, which circumstance of itself is sufficient to beget such an interest in the controversy, as to disqualify him from giving evidence against the defendant. It is not to be denied, however, that a party under such circumstances may be so far divested of that interest, as to be made a competent witness, and the point in this case is, does the record disclose that the Masons have been so far discharged from their liability for costs, as to qualify them to give evidence? We think not.

In the case of William Mason the elder, who was called on behalf of the plaintiffs, he was sworn, as the record says, (upon his evidence being objected to by the defendants,) upon his *voir dire*, at the instance of the party offering him as a witness. To the propriety of which the other party, the defendants, objected.

It has been insisted, that the first exception in its present form, does not properly present the question as to the correct-

ness of allowing this witness to be sworn on his *voir dire*, at *the instance of the party calling him*. As the case will go back upon *procedendo*, without deciding whether the exception raises the question or not, we will take the occasion to say, that the right to swear a witness upon his *voir dire*, clearly belongs to the party objecting to his testimony, and hence it was error in this instance to permit the plaintiffs, who offered the witness, to do so.

The objection to William Mason, Jr., as a competent witness, was well taken and ought to have been sustained. In his case there was no effort to divest him of his interest in the suit, by reason of his being the legal plaintiff on the record, nor no attempt, (except the offering of the discharge under the insolvent laws,) to show such an absence of interest as to authorise the witness to testify. We have no difficulty in reversing the court below upon this exception.

As it is possible that the plaintiffs may, upon another trial, qualify these witnesses to give evidence, or may prove the same facts by other competent witnesses, we will proceed to express our views upon the case as presented by the record, as if the same had been disclosed by legal and competent proof.

The case thus made, is this: The defendants below purchased from the Messrs. Mason, a quantity of cotton duck, *for cash*, which was delivered without any demand for payment at the time, and without any *express* conditions. A few days afterwards, the defendants upon having payment demanded by the Masons, offered to pay them in part with *their own notes*, over-due, and the balance in money. This offer was several times repeated, before the suit was brought, and as often declined by the Masons upon the ground of its not being a compliance with the terms of the sale, which was a sale *for cash*. In addition, the witness stated, "that when he sells for cash, he delivers the article without the cash; if he considers the purchaser good for the money and honorable, that this is the *custom*, the *usage*; and that the right to the cash was not waived by the delivery."

We will proceed to express our views upon the case as thus made in general terms, without referring in detail to the several prayers or exceptions in the order in which they are presented by the record.

Although the sale was *for cash*, yet if the delivery of the goods was made unconditionally and without fraud or mistake, the title to the goods thereby became vested in the vendees, notwithstanding the cash was not in fact paid, and of a consequence this action could not be maintained if the case rested here.

But it is said by the appellees, that the *delivery* cannot be regarded as unconditional, inasmuch as there was evidence that there existed among the merchants of the city of Baltimore *an usage*, "to deliver merchandise sold for cash, without receiving the cash simultaneously with the delivery, and without the vendors thereby waiving the right to the cash," and that this *usage* must be regarded as having entered into, and formed part of this contract. For this principle the case of *Powell & others, vs. Bradlee & Co.*, 9 *Gill & Johns.*, 220, is relied on. In many particulars the two cases are strikingly alike, but in others they are wholly dissimilar, as we shall presently attempt to show. The theory of the law of usage rests upon the presumption, that in certain transactions the parties did not intend to expressly stipulate the whole of the contract by which they designed to be bound, but that they intended to contract with reference to the known usages upon the subject, and that those usages were to be regarded as part of the contract. And although evidence of usage is sometimes admissible to add to, or to explain the terms of an agreement, yet it will never be permitted to vary or contradict the clear and manifest signification of the terms which the contracting parties may think proper to employ to express their meaning. Nor is evidence of usage admissible to oppose or alter a general principle or rule of law, and upon a fixed state of facts, to make the legal rights or liabilities of the parties other than they are by the common law. 2 *Burr.*, 1216. 2 *Johns.*, 327. 2 *Wash. C. C. Rep.*, 24. 3 *Watts*,

178. And in any case, a usage to be admissible, must be proved to be known to the parties, or be so general and well established that knowledge and adoption of it may be presumed; and it must be certain and uniform. Indeed it may be added that usages, in general, have fallen, in later years, much into disfavor with the courts, as they have been disliked and discountenanced in all times by the ablest of judges. In the case of *Stoever vs. Whitman*, 6 *Binney*, 416, C. J. Tilghman says, "Miserable will be our condition if property is to depend, not on the contract of the parties, expounded by established principles of law, but on what is called the custom of particular places, so that we may have different laws in every town and village." And also Judge Story remarks, in the case of *Donnell vs. Insurance Co.*, 2 *Sumner*, 367, "I am among those judges who think usages among merchants should be very sparingly adopted as rules of law, by courts of justice, as they are often founded in mere mistake, and still more often in the want of enlarged and comprehensive views of the full bearing of principles."

The evidence of usage in this case, was manifestly too vague and unmeaning, to warrant, upon any principles, the court to submit any proposition to the jury based upon it. It is difficult to conceive of a commercial transaction between any parties and relating to any subject matter, and wherever negotiated, that might not be as readily controlled by such a usage as the one now before us. In this particular, this case is wholly unlike the case of *Powell vs. Bradlee*, 9 *G. & J.*, 220. There, one witness proved "that it was *then*, and *now is*, the *general* usage among *flour* dealers in *the city of Baltimore*," &c.; and by another witness, "that in sales of *flour* for cash in the *city of Baltimore*, it is the *general* and *constant* usage," &c. Thus it will be seen, that this evidence confined the usage, first, to the article of flour, and to flour dealers; secondly, it showed it to be general; thirdly, that it related to the city of Baltimore; and fourthly, that it was in existence at the time the contract and delivery were made. Upon this evidence the court said, very properly, that the question of usage was rightly left to the jury.

Another prayer of the plaintiffs presents the question of fraud, on the part of the defendants, in the purchase of the goods. This fraud is to be gathered, not from any direct proof upon that point, but is to be inferred from the circumstance alone of the defendants having tendered, after obtaining possession of the goods, payment for the same in the plaintiffs' own over-due notes. Such an inference from such a fact, is wholly unwarrantable. On the contrary, we regard such a transaction, in the absence of direct and independent proof of fraud and circumvention, as legitimate and usual among merchants. Conceding that both the sale and delivery in this case were *conditional* upon payment in cash, that *the alleged usage* was clearly established, and that this transaction took place in reference to that usage, still we regard the offer of the defendants to pay for the goods in the plaintiffs' own over-due paper, to be a virtual compliance with the condition, and for all practicable purposes was equivalent to a tender of *payment in cash*. A *cash* payment, in ordinary parlance is understood in contradistinction to a *credit payment*, and there is no more reason for supposing that the *first* is to be made in *money*, than that a deferred or credit payment is, when due. Each payment must be made in the same way. The only difference, as before remarked, is, that one must be made at the time of sale or delivery, the other when the credit has expired. What discharges the one will also discharge the other. Since the case of *Clarke vs. Magruder*, 2 Harr. & Johns., 77, was determined, it has been regarded as the settled law of this State, that a note drawn by the creditor may be set off, or pleaded in discount, by his debtor, although the latter may have obtained possession of the note, at a discount, and with the view of the set-off, after he became indebted to his creditor. Upon the same principle, we cannot see why, in this case, the possession of the plaintiffs' notes by the defendants, should not, of itself, have constituted a just and legitimate ground for the purchase of the goods, with the view, in that way, of the liquidation of the notes, and without incurring the imputation of a fraudulent design

in so doing. Indeed, if fraud is inferable at all from this transaction, as presented by the proof in the record, it should rather be imputed to the vendors, who while they were over anxious to make the defendants pay their debts, were yet unwilling to pay, or even recognise their own.

*Judgment reversed and procedendo awarded.*