# Anewalt *versus* Hummel.

In an action by a landlord against his tenant to recover the value of certain hay and stubble belonging to the landlord, which the tenant on entering into possession of the demised farm had found thereon and converted to his own use, the defendant offered evidence to prove that it was a custom among farmers in the neighborhood to allow the tenants the use of such produce. The testimony was limited to that of four farmers who testified that such was their practice in dealing with their tenants.

*Held*, that the evidence was insufficient to submit to the jury as to the existence of the custom.

*Held* further, that the custom, even if proved, was unreasonable and therefore invalid.

March 10th, 1885. Before MERCUR, C. J., PAXSON, TRUNKEY, and STERRETT, JJ. GORDON, GREEN and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Northampton county:* Of July Term 1884, No. 10.

This was an action on the case, arising on appeal from the

[Anewalt *v.* Hummel.]

judgment of a justice of the peace, by Peter Anewalt against Jacob Hummel to recover the value of certain hay and cornstalks.

The facts of the case together with the instructions of the lower court which form the subject of the material assignment of error, are fully recited in the opinion of the Supreme Court.

Verdict for defendant and judgment thereon. The plaintiff thereupon took this writ.

*John C. Merrill,* for the plaintiff in error.

*W. S. Kirkpatrick,* for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, April 13th, 1885.

This action was commenced before a justice of the peace. It resulted in a judgment in favor of the plaintiff for $16.50. The defendant entered an appeal to the Common Pleas. After a trial, consuming nearly an entire day in that court, there was a verdict for the defendant. The plaintiff brings it here upon a writ of error. It may be, the parties regard litigation as a luxury. Be that as it may they have a legal right to come here, and we will dispose of the case with as much care as if it involved a large amount as well as a great principle.

The plaintiff was the owner of a farm; the defendant was his tenant. When the latter moved upon the demised premises he brought with him two loads of hay and a quantity of cornstalks. At the end of the term he took away about the same quantity of each. This was authorized by the terms of the lease, and is not the subject of the present contention. The dispute is about a small quantity of hay and cornstalks which belonged to the landlord and which the tenant found on the premises when he moved there. This hay and cornstalks the tenant fed to his cattle and refused either to compensate' the landlord therefor, or to leave a corresponding amount when he moved off; hence this suit.

The lease is silent upon this matter. Upon the trial below the landlord testified that he gave the tenant permission to use the hay and cornstalks in question provided he left the same amount when he moved. He said in the course of his examination: "When he (the defendant) had signed the lease, and the witness John Hartzell had signed the lease, then Hummel got up and said "Now, Mr. Anewalt, I must go; how is it about the hay and cornstalks?" and I says, "You can have what is left, but you must leave the same

[Anewalt v. Hummel.]

when you leave," and he says, "It is no more than right and I need it."

The defendant when upon the stand denied this and said that "there was nothing said about the fodder or about the hay;" but that there was a custom amongst farmers in that neighborhood, by virtue of which he was entitled to use this hay and the cornstalks without making compensation or leaving an equal quantity in place thereof. He called several witnesses to prove such custom, and the admission of this evidence and the rulings of the court thereon form the subject of the several assignments of error.

The first four assignments are not of much importance. They relate to the admission of evidence in proof of the alleged custom; but the custom itself is so obscurely stated in the questions, and the answers are so vague, that no harm could have resulted under proper instructions from the court. One witness said: "well, what they bring there they ought to take away again, that is the custom;" another witness said "of course he would take away as much as he put there." Daniel Fogle, another witness for the defendant, went a little further, and said: "Well, if it is on the premises, on the farm or in the barn, it is the custom and practice for them to use the fodder; that is the custom and practice in that neighborhood—to feed what remains upon the farm and has not been taken away." The knowledge of this witness appears to have been confined to himself and a neighbor named Desh, both of whom allowed their tenants this privilege, and in the opinion of the witness that made the custom and practice. The testimony of Isaac Nesley was substantially to the same effect. He did not however name any other farmer who followed such a custom.

The plaintiff called two witnesses who denied there was any such custom in that neighborhood.

The learned court submitted the question of this custom to the jury, and instructed them that if they found it really existed, "then I say to you that the law presumes that the parties made their contract in subjection to that custom and the custom itself would enter into the contract as much as if it had been expressly included in it; . . . . . then so far as that branch of the case of the plaintiff is concerned he would have failed in making out a case entitling him to recover." See fifth assignment.

This was error. The evidence of the custom was too weak and inconclusive to submit to the jury. The most that it amounted to was the practice of a very limited number of farmers in dealing with their own tenants, while there were other farmers in the same neighborhood who had never heard

13 OUTERBRIDGE—18

of any such practice, and who did not follow it themselves. It needs but a moment's reflection to see that this would not make a custom binding upon the entire farming community in the absence of an express contract upon the subject matter.

Moreover, had the proof been clear, it was a bad custom. It was so wholly unreasonable that it could not be set up as a defence. It was a custom that the tenant may use the property of his landlord without making compensation. The tenant might with equal propriety have set up a custom that his landlord should pay his debts or give him his share of the crops. It is a familiar rule of law that a custom to be valid must be reasonable. We are of opinion that the learned judge erred both in the admission of the evidence and in his instructions to the jury.

We sustain all of the assignments of error.

> Judgment reversed, and a *venire facias de novo* awarded.