# Heller v. Young, Appellant.

*Custom—Farm lease—Right to hay—Evidence—Landlord and tenant.*

A provision in a lease of a farm for one year giving the landlord one-half the grain, and two loads of hay as, rental, cannot be varied by proof of a custom to the effect that no hay could be sold off the place without the landlord's consent, and that the landlord was entitled to have half of the proceeds thereof, where there is no evidence as to the time of the existence of the custom, nor of its extent, and where the two witnesses called to establish it may have described as a custom what was merely a prevailing practice with reference to terms of farm leases. Such a custom is also unreasonable.

Argued Dec. 4, 1916. Appeal, No. 391, Oct. T., 1915, by defendant, from judgment of C. P. Northampton Co., April T., 1915, No. 102, on verdict for plaintiff in case of William J. Heller v. Milton Young. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for the removal of hay from a farm. Before BRODHEAD, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $95. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellant.— There was no sufficient proof of a custom: Iddings v. Nagle, 2 W. & S. 22; Craig v. Dale, 1 W. & S. 509.

*Geo. R. Booth,* for appellee.—Every demise between landlord and tenant in respect to matters in which the

parties are silent, may be fairly open to explanation, by the general usage and custom of the country or the district where the land lies; every person under such circumstances is supposed to be cognizant of the custom, and so contract with a tacit reference to it: Van Ness v. Packard, 2 Peters 138; Stultz v. Dickey, 5 Binn. 285; American Academy of Music v. Bert, 8 Pa. C. C. R. 223; Aughinbaugh v. Coppenheffer, 55 Pa. 347; Anewalt v. Hummel, 109 Pa. 271; Reiff v. Reiff, 64 Pa. 134.

OPINION BY HENDERSON, J., March 16, 1917:

The plaintiff brought an action of trespass before a justice of the peace to recover damages for the appropriation of a quantity of hay to which he claimed title. The transcript of the magistrate set forth the cause of action in these words: "Plaintiff's claim is for damages sustained by said plaintiff by reason of said defendant removing hay from the plaintiff's farm." The facts out of which the controversy arises may be briefly stated: Milton T. Lerch owned a farm in Northampton County and in the fall of 1913 made a parol lease of it to the defendant for one year from the first of April, 1914. By the express terms of the lease the landlord was to receive as rent one-half of the fall and winter grain to be raised on the place and two loads of hay. A "potato patch" was also reserved and the tenant was to thresh the grain and take it to market. The defendant moved on the farm about the first of April, 1914, at which time there was a quantity of hay in the barn estimated at about five tons which had been left there by the tenant of the preceding year. This hay was used by the defendant. The work on the farm was prosecuted in accordance with the lease as stated between the parties and at the end of the term the defendant removed all of the hay which had not been consumed by stock kept by him. In June, 1914, the landlord sold his farm to W. J. Heller, the plaintiff, subject to the lease. After the removal of the tenant from the farm the plaintiff claimed the hay which the tenant took

away with him alleging that according to a custom prevailing in the neighborhood all hay not used by the tenant on the place during the term became the property of the landlord and that he had acquired from his vendor all the rights which the latter would have had under the lease if he had not sold the place. It is not clear under the evidence whether the plaintiff claimed the hay which was there at the time the defendant's term commenced but there is no evidence to show that Lerch sold that hay to the plaintiff or that the latter ever acquired any right thereto. His case must stand, therefore, on his claim to that part of the crop produced in 1914, which the defendant took away with him. It is not alleged by the plaintiff that there was any agreement that the unconsumed hay should remain on the premises at the end of the term. What is claimed is that there was a local custom to that effect and the learned trial judge submitted the case to the jury on the inquiry whether such a custom prevailed. The evidence on that subject was that of Lerch and a former tenant of his, Monroe Young. According to the first of these witnesses the custom in Northampton County in the case of leases such as he made was that if any hay remained on the farm at the end of the term it was to be left there for the successor of the outgoing tenant; that if any hay was sold off the place the landlord and tenant were entitled to an equal division of the proceeds and that it was generally the rule that the tenant had to have the consent of the landlord about selling. The second witness on the subject stated the custom to be that "the tenant when he leaves is to leave about as much hay as he got when he moved there. That is the way we have always had it and if there was any hay left that he did not feed it was to be divided between the two parties." He further stated that the matter of hay between the landlord and tenant "is always mostly a custom." There is no evidence as to the time during which this alleged custom has been in existence nor its extent. From the testimony of Lerch it might be inferred that it

was coextensive with Northampton County. The testimony of Young seems to restrict it to Lower Saucon Township where the farm was located and where the witness had carried on his farming operations. It was in that locality where he claims to have heard of the custom. Objection was made to the admission of this testimony on the ground that it was not sufficient to establish a custom and that if it were competent for that purpose the custom sought to be set up was unreasonable and could not be sustained.

The express contract of letting proved by the plaintiff entitled the tenant to all of the crops except one-half of the grain and two loads of hay. There is nothing obscure or ambiguous about the agreement and the hay was one of the subjects which the parties had in mind when the lease was made. It was well said in Iddings v. Nagle, 2 W. & S. 22, that "the owner of a farm who in general terms agrees to let it for a year or any greater term in consideration of being paid a certain rent by the tenant must be understood as agreeing that the tenant shall have the whole product arising from his own labor on the farm." Unless, therefore, the tenant is affected by a contract which the law will imply independently of the express agreement the plaintiff's action cannot be sustained. The implied contract relied on is that supposed to exist because of the custom attempted to be set up. Two objections suggest themselves against such implied obligation: (1) The custom is not sufficiently established as to extent or duration. It is not clear from the testimony whether the first witness in referring to a custom had in mind the implied obligation of the lease or the general practice prevailing among owners of farms in that neighborhood of letting their lands on the terms which he describes as a custom. It does not appear whether lands are usually leased by parol or by contracts in writing and what the witness describes as a custom may have been merely a prevailing practice with reference to the terms of the lease. No facts are stated

from which it may be fairly inferred that the witness has heard or seen the contracts of letting made by other farmers in that part of the State and is therefore familiar with the terms entering into such agreements. Nor is the testimony of the other witness clearer or more specific. He had farmed in the township as a tenant of Lerch for about seven years and was at the time a tenant of one Hess. Whether he had ever seen a lease other than his own does not appear nor is the extent of his familiarity with the business of the leasing of farms disclosed. He had heard two persons whom he named speak about "the custom as to the hay" but he does not state what knowledge they had nor what information he derived from them. It would be establishing a bad precedent to create a liability through the operation of a custom on testimony of this character in the absence of an express agreement. The certainty of leases definitely expressed would be thrown into great confusion if their extent and binding operation were to be controlled by the opinion of one or two witnesses as to the existence of a custom in the immediate neighborhood not shown to have been within the knowledge of the other contracting party nor to have so long and so generally existed as to create a presumption that the express agreement was entered into with the understanding that it was to include terms arising under a custom. The practice of a limited number of farmers in negotiations with their own tenants is not sufficient to establish a custom if indeed the custom proposed to be set up were available at all: Anewalt v. Hummel, 109 Pa. 271. Generally speaking, the parties to a contract are bound to its express terms and a usage set up to enlarge or qualify it must be ancient, certain, uniform and reasonable: Rapp v. Palmer, 3 Watts 178. (2) Another objection is that the custom set up is bad. It would take from the tenant the fruit of his labor without compensation. It cannot be doubted that the hay cut by the tenant was one of the crops produced on the farm and a proper subject of contract. As to part of it

at least, provision was made in the agreement to deliver two loads to the landlord. The presumption is that the remainder was to belong to the tenant. It was said in Craig v. Dale, 1 W. & S. 509, by Justice KENNEDY, "I apprehend that no person of ordinary experience throughout the State would attempt to question the right of the tenant to dispose of the hay raised by him as he pleases unless he be strictly restrained from doing so by the terms of his lease." And this for the reason that the parties are competent to contract on the subject and when they define the terms under which they deal such agreement becomes the law for them. According to the custom set up the tenant's interest in the hay would depend on the number of his horses and cattle. If by reason of poverty or otherwise he was unable to keep a considerable stock on the place all of the hay not used would belong to the landlord unless he could obtain the latter's consent to sell before the end of the term. Mr. Lerch, the only witness testifying on that subject said that the consent of the landlord was necessary to a sale of hay and it would be manifestly to the pecuniary advantage of the landlord to refuse to sell, as a result of which the hay would remain on the place for his exclusive benefit. If the tenant is to be bound by a contract of this character it is important that the intention of the parties be expressed in the lease: Anewalt v. Hummel, supra. The court was in error, therefore, in submitting to the jury the question whether a custom existed as claimed by the plaintiff. It follows that the request of the defendant for binding instructions should have been sustained as the plaintiff presented no evidence tending to show that he had any interest in the hay which was on the premises at the time the defendant took possession as tenant and as the evidence was insufficient to establish a custom under which he became entitled to all of the hay which was not fed by the defendant to the stock on the place during his term.

The ninth assignment is sustained and the judgment reversed.