# THE HUBBARD FERTILIZER COMPANY

## vs.

## AMERICAN TRONA CORPORATION.

*Sale of Chemicals—Warranty as to Ingredients—Evidence.*

An express warranty, on a sale of muriate of potash, that it should not contain borax in excess of ten per cent., *held* not to have been violated.                                   p. 248

That the seller of chemicals, to be used in the manufacture of fertilizers, quoted the opinions of chemists as to the possible injurious effect of a certain ingredient upon growing plants, cannot justify the claim that there was a warranty by him as to the presence or absence of such ingredient in the chemicals sold.                                      p. 249

Evidence of custom or usage is not admissible if it conflicts in any way with the statutory law.                p. 249

A question asked of defendant's secretary, as to whether he had in his possession any "compilation, tabulation, or statement," showing a certain matter, *held* properly excluded, no proper foundation having been offered therefor, and it serving merely to give plaintiff an opportunity to offer secondary evidence, which opportunity was not availed of.        p. 250

*Decided January 10th, 1923.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by the Hubbard Fertilizer Company against the American Trona Corporation. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Harry M. Benzinger* and *Henry H. Dinneen,* for the appellant.

*Charles McH. Howard* and *William L. All,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit was brought by the Hubbard Fertilizer Company to recover from the American Trona Corporation a large amount of money which had been paid out by the plaintiff as damages supposed to have resulted from the use by its customers of fertilizer manufactured by the plaintiff. The alleged damage was claimed to have been occasioned by borax in the muriate of potash sold by the defendant to the plaintiff.

The first two counts of the declaration were upon the theory of a breach of an express warranty and during the progress of the trial a third count was added, upon an alleged or implied warranty as to the percentage of borax in the potash. There were in reality two contracts, one calling for a single carload which was shipped to Baltimore from California, and used by the plaintiff in the fertilizer manufactured by it, and in this case no complaint was ever made of any deleterious effects resulting from the use of the fertilizer. The second contract was for a number of carloads which were shipped, part to Maine, and the balance to Norfolk and Baltimore.

That shipped to Maine was used by the plaintiff in the manufacture of fertilizer intended for use in connection with the growing of potatoes, principally in Aroostook County.

A large amount of the fertilizer containing this potash was made up, sold, and used, and certain it is that the fields upon which this fertilizer was used gave crops of only about one-half of the amount to have been expected. It is for this reason that the plaintiff made settlement with the farmers, paying out in so doing $122,640.16, and having done so, this suit was brought to recover the amount so paid out to its

customers upon an alleged breach of warranty given by the Trona Corporation to the Hubbard Company.

The warranty, if any, was that the muriate of potash sold by the Trona Corporation should not contain borax to an amount in excess of ten per cent. This appears in letters which passed between the parties. The charge of a violation of the supposed warranty is not borne out by the evidence of the plaintiff. Samuel K. Wiley, an analytical chemist, specializing in fertilizers, fixes the percentage of borax, found in the fertilizer manufactured by the Hubbard Company, as 1:24%, 1:21% and .84%. This witness further testified that, based upon his analysis of the mixed fertilizer samples supplied him by the Hubbard Company, no one of them contained borax which was in excess of ten per cent. of the amount of potash salts which, according to the formula given, had been used in the fertilizer in question, but only about three-quarters of ten per cent., and in the third case two-thirds of ten per cent.

The evidence therefore adduced by the plaintiff itself falls far short of establishing a violation of the supposed expressed warranty that the percentage of borax should not exceed ten per cent. An analysis was also made by three chemists in California, who reported a borax content of from 6:97% to 8:29%. Thus all of the analyses showed a percentage of borax well under the warranted amount.

Further than this, that borax would have an injurious effect on plant life was not known at the time when the contracts were made and the Trona potash shipped to the Hubbard Company. This is positively testified to by Dr. Wiley. It is true that at this time there had been some complaints from Indiana, where the Trona product had been used on corn, but these seem to have been of a general character, and the record is without anything to show, either the amount of Trona potash used, the method of its use or the nature of the soil on which used, whether similar to that of Aroostook County or not. The only evidence given in the case was on the part of the plaintiff; so in the foregoing resume there is

no evidence of the defendant involved. In this state of the proof there is nothing upon which the plaintiff can base a claim for recovery for a breach of an express warranty.

Nor is the case made out upon an implied warranty that the material sold should be suitable for the purpose for which it was purchased. It is perfectly true that the selling agents knew that the Trona potash purchased by the Hubbard Company was to be used in the manufacture of chemical fertilizer, but Mr. Samuels, the manager of the Hubbard Company, made the second purchase as the result of the trial of the first car load lot which had been shipped to it. It must not be lost sight of that at another point he testified that he made the second purchase solely in reliance upon the representations made to him, two statements difficult to reconcile, and when reference is had to the letter of October 11th, 1918, which apparently contained the representations he had in mind, it is found to contain only quotations of opinions expressed by a number of chemists as to the possible injurious effect of borax upon growing plants. It is at best therefore merely an expression of opinion, a far different thing from a warranty, express or implied.

So far as the law applicable to the facts of this case is concerned, it is sufficient to say that it is fully covered by the Uniform Sales Act, now codified in this State, in section 36 of article 83 of Bagby's Code, particularly, sub-section 4, which says that where an article is sold "under a patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." Apart from this, citations might be given in large number from text books and adjudicated cases to the same effect. There was an attempt made to prove a custom or usage in the trade. The exclusion of this offer forms the basis of one of the exceptions. It should need no enumeration of authorities to show that no evidence of custom or usage can be admitted, if it conflicts in any way with the statutory law. See *Foley* v. *Mason,* 6 Md. 49; *Jarrett* v. *Staum,* 138 Md. 217.

The trial court was entirely correct in sustaining the objection to the question put to the secretary of the defendant, as to his having in possession any "compilation, tabulation or statement" showing the borax content of the muriate of potash shipped to Maine. No proper foundation had been offered for such a question. At most it could only have been availed of to give the plaintiff an opportunity to offer secondary evidence, and no such offer was made at any time during the progress of the trial.

The record in the case and briefs of the respective parties have been examined with great care and no reversible error is found in the various rulings of the trial court, and the judgment appealed from will therefore be affirmed.

*Judgment affirmed, the appellant to pay the costs.*