## Craig *against* Dale.

The way-going crop, to which a tenant is entitled upon his leaving demised premises, includes as well the straw as the grain, which he may remove and dispose of as he pleases, being subject only to the terms of his contract, and not to any supposed custom of the country on that subject.

ERROR to the Common Pleas of *Northumberland* county.

William Dale against Charles Craig. This was an action of trover to recover the value of the straw of four hundred dozens of grain, under the following circumstances:

The plaintiff leased a farm to the defendant upon the following terms:

"This Indenture, made this 29th day of November, A. D. 1837, between William Dale, of Liberty township, Columbia county, of the one part, and Charles Craig, of Oxford township, Warren county, state of New Jersey, of the other part, witnesseth, that the said William Dale, for and in consideration of the yearly rents and covenants hereinafter mentioned, hath let, and to farm let unto the said Charles Craig, all that messuage or tract of land whereon the said William Dale now resides, for and during the term of one year from the first day of April next; the said Charles Craig agrees to pay to the said William Dale, or his heirs, the sum of $150 per year; the said William Dale reserves for his own and family's use, the new end of the house, and the kitchen loft and garret, and the one-fourth of the garden, and the one-fourth of the truck-patch; he also reserves the crop in the ground, and room to put it in the barn and thrash it, and room in the east end of the stable for two horses and two cows; the said Charles Craig is to pay all taxes on said lot for said year, and to deliver up the possession of the said premises at the expiration of said term. In witness whereof, the parties have hereunto set their hands and seals, the day and year first above written."

After the tenant removed from the premises, he took the way-going crop from the farm to another place to which he moved, and refused to return it. This action was brought by the landlord to recover the straw, upon the ground that it should not have been taken from the demised premises. On the trial, there was evidence given by both parties to prove the custom of the country as to the right of a tenant to remove the straw from demised premises, aud the witnesses differed about it. The court referred the cause to the jury, with instructions that they should be

I.—2 s*

[Craig v. Dale.]

governed in their finding by the evidence of what the custom of the country was; and they found for the plaintiff $16 damages.

The opinion of the court was assigned for error.

*Miller* and *Slenker*, for plaintiff in error, argued that the tenant was entitled to the way-going crop, which included as well the straw as the grain. 5 *Binn.* 285, 289; 2 *Binn.* 487; 1 *Penn. Rep.* 224; 8 *Watts* 282; 3 *Serg. & Rawle* 512; *Peake's Cas.* 197; 1 *Meriv.* 15. But, for the sake of the argument, granting that the tenant was wrong in claiming a right to the straw, the plaintiff cannot support trover against him. In order to maintain this action, the plaintiff must show that he had the right of possession and right of property in the subject matter, at the time of the conversion, which could not be shown here. 12 *East* 616; 13 *East* 522; 11 *East* 210; 2 *Saund. Pl. & Ev.* 869; 2 *Selw. N. P.* 523; 7 *Term R.* 9; 3 *Stark. Ev.* 1490; 9 *Cow.* 52; 6 *Johns.* 44.

*Greenough*, for defendant in error, cited 6 *Law. Lib.* 359.

The opinion of the Court was delivered by

KENNEDY, J.—A number of errors have been assigned in this case, which it is unnecessary to notice in detail, as the court below erred in their instruction to the jury on the subject of the way-going crop and of what it consisted, and we think that the correction of their error in this respect will determine the whole case in favour of the plaintiffs in error, who were the defendants in the court below. The court on this matter charged the jury, that notwithstanding the tenant was entitled, in Pennsylvania, to the way-going crop according to the custom thereof, or law thereof they ought rather to have said, yet it depended upon the general custom or practice which prevailed among landlords and their tenants, whether the straw was included or not in the way-going crop; and accordingly referred this question to the jury as one of fact, to be decided by them from the evidence which had been given in relation to it. Now, we are decidedly of opinion that the straw is a constituent part of the way-going crop; for it is just as much a part of the annual product arising entirely from the labour of the tenant as the grain itself, and being of real value to the tenant, and frequently indispensably necessary for the support of his cattle, which he cannot possibly do without, more than he can the grain raised by him, there is just the same reason why he should have all the benefit to be derived from it, that there is for his having a right to take the grain, in order that he may make all the profit he can out of it, either by giving it to his cattle or disposing of it otherwise, as he shall think best. It is not essentially necessary that the straw grown upon a farm should be used or retained upon it, for the purpose of keeping it in the same productive state, and preventing it from becoming worse; because

[Craig v. Dale.]

the soil of any farm may even be improved and rendered more fertile by keeping it in grass and permitting it to lie fallow a reasonable portion of the time, without using or leaving any of the straw upon it.   And frequently a farm, while in this state, by using it for the purpose of feeding and grazing cattle, may be made productive of greater profit to the tenant, as also of value to the landlord, than by growing grain upon it the most of the time with the aid of all the straw belonging to it.   This is putting it in a state of rest from cultivation, which land requires in order to render it very productive even of grain; and all the straw or manure that can be made from it and applied to the land, will not supply the want of seasonable rest.   The straw is a subject of merchandise also, as well as the grain, and why should not the tenant, when he pays a rent to the owner of the land equal to the annual value of it, have the full benefit of the straw for this purpose if he chooses.   Farmers who till their own lands do not always consider it essentially necessary that the straw grown thereon should be applied in some form or other, for the purpose of improving the soil; for they frequently make merchandise of it by selling it; and why should they, in case they let their lands to tenants for full rents, receive the rents from them, and make profit beside out of the product of their labour by taking from them the straw and selling it?   Distributive justice, in such case, would seem to give the straw as well as the grain to the tenant, as part of the way-going crop, to be taken and disposed of by him as he pleases, seeing it is the product of his own labour; from the land of his lessor to be sure, but then he has paid the lessor a full compensation for the use of the land.   If the tenant cannot have the straw as a part of the way-going crop, because it would be an injury to the farm to remove it therefrom; for the like reason, he would not be permitted, while he remained in the possession of the farm under his lease, to remove therefrom any of the hay made by him on it, for the purpose of selling or using it in any way off the farm; because it would be quite of as much benefit to the farm, if not much greater, to use the hay made from it by feeding it to cattle thereon.   And even an additional reason seems to exist against the tenant's removing the hay, that does not exist in the case of the straw; which is this, that the grass, of which the hay is made, is often not the product of the labour of the tenant, either in part or in whole, whereas the straw always is; yet I apprehend that no person of ordinary experience throughout the state, would attempt to question the right of the tenant to dispose of the hay made by him on the farm as he pleases, unless he be expressly restrained from doing so by the terms of his lease. This he may be, because it is competent for the parties, by their agreement in this behalf, to make a law for themselves.   If the landlord, therefore, does not wish that any of the straw or hay grown and made on the leased premises should be removed from them,

[Craig v. Dale.]

he ought to make his wish, in this respect, known to the tenant at the time of treating for the lease, so that the tenant may be enabled to meet it by not agreeing to give as much rent as otherwise he would do. If the lease be reduced into writing, whatever is finally agreed on between them, as to either the hay or the straw not being taken or removed from the leased premises, ought to be inserted in the writing, otherwise the tenant will be entitled to dispose of them as he pleases. The court below were, therefore, wrong in submitting it to the jury to be determined by them, as a question of fact, whether the straw formed a part of the way-going crop or not. Besides, the testimony showed that it ought not to have been left to the jury as a question of fact. For if it proved any thing at all, it was, that the general practice, as well as the general understanding was, that the tenant had a right to remove the straw; or at most, that there was no general practice or custom, either in favour of or against his exercising such right. Two witnesses only were produced on the part of the plaintiff below, Peter Pursel and Samuel M'Mackin. The first of these testified, that he *believed* it was the custom for tenants to leave the straw of the way-going crop, but he *had known instances of tenants' hauling off* both the grain and *the straw*. The second, after stating that he was *ignorant as to the point*, that he *never paid any attention to it*, said it is generally *understood* tenants should leave the straw and such things on the ground. Three witnesses, however, were adduced on behalf of the tenant or defendant below, James Shearer, George Newcomer and Joseph Campbell. The first of them testified that he had had land farmed, and when the straw was not excepted in the lease, it *had been the general custom, so far as he knew, for tenants to take the straw where they pleased;* that it was *generally mentioned in the lease;* that he had *not seen* a lease where the straw was not reserved. The second of them testified that he *had known several instances of tenants' taking* the *grain in the straw to adjoining farms*. The third witness testified that he *had known grain to be taken off in the straw:* did not know it to be customary, but *knew it to be done*. So far, therefore, as regards the number of witnesses brought forward by the parties on this point, it would rather seem to have been in favour of the tenant's side of the question. But surely, it could be little else than absurd, to say that a general custom could be established by such conflicting testimony. Such a thing cannot obtain generally without being generally known; and if so, witnesses would concur in their testimony showing that it was so. But even supposing all the witnesses to have concurred in opinion that the general custom or practice was, so far as they had any knowledge of it, for the tenant to leave the straw of the way-going crop on the land where it grew, it would still have been worse, if possible, to have determined from their evidence, that such was the general custom and practice throughout the whole state;

[Craig v. Dale.]

when the witnesses have given no evidence whatever of their having any knowledge on the subject extending to the whole state; but on the contrary, show clearly that their knowledge, at the utmost, only extends to the neighbourhood of their residence. If such evidence were to be held sufficient to establish a custom or usage on the subject, it is evident that the custom might be different not only in different counties of the state, but different in different parts of the same county, without its being possible to set any fixed bounds or limits to it; and hence would arise a state of uncertainty, incapable of being settled, that would prove a source of endless litigation. We are, therefore, of opinion, that the question which the court submitted to the jury to be decided by them as one of fact, was a question of law, which the court ought to have decided itself; and in doing so to have instructed the jury that the straw was a part of the way-going crop, and being so, the tenant had a right to remove it as well as the grain; and, consequently, the plaintiff below was not entitled to recover.

Judgment reversed.