## Iddings *against* Nagle.

A lease between a landlord and tenant is to be construed by those rules which
govern the construction of contracts, and not by evidence of the custom of the
country.   A tenant is entitled to the straw which grew upon the land, or not, as
his contract may provide.

ERROR to the Common Pleas of *Union* county.

In the autumn of 1838, Robert Kelly, being the owner of a
tract of land in Union county, let a field of it to the defendant,
Jacob Nagle, for the purpose of sowing it with rye in the course
of the same autumn.   Nagle was to furnish the seed, to cut and
secure the rye when it should ripen, afterwards thresh and clean
it, and then deliver to Kelly one-third part thereof at such place
as the latter should appoint.   Nagle accordingly tilled the field,
and sowed it with rye.   While the rye was growing on the
ground, Kelly, on the 2d of April 1839, by his deed, sold and
conveyed the land to Thomas Iddings and Andrew Iddings, the
plaintiffs, with an express understanding that they were to re-
ceive the one-third of the rye which Nagle had sown, and agreed
to deliver to Kelly.   When the rye had ripened, Nagle cut and
hauled it off the land upon which it grew to his own barn, where
he threshed and cleaned it.   After doing this, he delivered one-
third of the rye to the plaintiffs, but refused to deliver any por-
tion of the straw to them, the whole of which they claimed and
required him to deliver.   The plaintiffs then instituted this action,
which is in trover, before a justice of the peace to recover the
value of the straw, when they obtained a judgment in their favour
against the defendant; who appealed to the Court of Common
Pleas, where a verdict and judgment were rendered for him.

On the trial of the cause, in the court below, the plaintiff's
counsel submitted nine points to the court for their instruction
on them to the jury.   The answer to the eighth has been as-
signed for error.   By this point, the court were requested to
instruct the jury, " that there was no distinction between a
tenant who resides on a farm and a mere cropper of a field."

[Iddings v. Nagle.]

The court, in answer to this point, said, "it is conceded to be correct, if the jury find from the evidence that there is a different custom prevailing in the case of a cropper of a field, from the custom existing in the case of a tenant for a year residing on the farm. If the jury find that a custom exists, by which a mere cropper of a field upon the shares carries off the straw and converts it to his own use, where there is no express contract in relation to the straw, then the verdict should be for the defendant." In the second error, it is claimed that " the court ought to have charged the jury that there was no distinction between a cropper of a field and a tenant of a farm; and that in either case the landlord was entitled to the straw." The third and fourth errors assigned, alleged that the court erred in leaving it to the jury to decide whether there was any custom existing in relation to the taking of the straw or not; and that instead of doing so, they ought to have directed the jury that, from the whole of the evidence, the plaintiffs were entitled to recover.

The case was submitted without argument, by *Slenker,* for the plaintiffs in error, and by *Miller,* for the defendant.

The opinion of the Court was delivered by

KENNEDY, J.—On the trial of the cause, it was proved that there was a barn on the tract of land of which the field where the rye was grown composed a part; and although not in good condition, yet it was such as the rye might have been threshed in. Evidence was also given by both sides on the question, whether a general usage or custom existed, whereby the cropper, as in the present case, there being no express agreement made in relation to the straw, was precluded from taking it off the land, and using it for his own purposes. The evidence in regard to it was conflicting and contradictory. Several witnesses, produced on the part of the defendant, testified that the custom was, where there was no express contract between the parties to the contrary, that the cropper took the straw, and disposed of it as he pleased. Some of them went further, and said it was also the general custom for a tenant residing upon the land to do the same; that there was no difference between the right of a cropper in this respect, who was to deliver to the landlord his proportion of the grain grown upon the land, in a state separated from the straw and chaff, and that of a tenant for a year, or term of years, residing upon the leased premises. But other witnesses, produced on behalf of the plaintiffs, testified that the general custom in their neighbourhood had been and was, in a case like the present, that the straw belonged to the land, and that the cropper could not take it off the land without returning it after it was threshed; nor dispose of it off the land without the consent of the landlord.

[Iddings v. Nagle.]

Now it is evident, from the diversity of opinion among the witnesses in this case, as well as in the case of *Craig* v. *Dale*, (1 *Watts & Serg*. 509), decidéd by us at the present term, that it would be utterly impossible to administer justice with any degree of certainty whatever, according to the real understanding of the parties at the time of their entering into the contract, by endeavouring to make custom on the subject the rule for interpreting their contract; because the witnesses, not only of different, but of the same neighbourhoods, disagree in their opinion as to what the custom is. Their testimony, therefore, if it tends to prove any thing at all, is that there is no general custom existing on the subject. Hence it is obvious, that to leave the question, under such conflicting evidence in every case to be determined by the jury, would, in effect, be to prevent us from ever having any fixed rule by which it could be settled. Every case would be determined according to the private wishes and sentiments of the jury who shall be called on to try it; and the verdict given by them for the cropper or tenant, or against him, as the jury shall happen to be composed of croppers and tenants, or of landlords. This would literally be referring the issue between the parties to mere chance, and would be productive of an interminable contest between the two classes. If no better rule can be found, they might as well decide the matter themselves by drawing straws; and certainly it would be infinitely better for the peace of the community that they should do so. There is certainly no reason why contracts creating the relationship of landlord and tenant, or landlord and cropper, should be treated differently, in respect to the construction of them, from other contracts. Indeed, I take it to be a universal rule that the construction be reasonable and as near to the minds and apparent intent of the parties as possible, and the rule of law will permit. *Verba intentioni debent inservire.* 2 *Bl. Com.* 379; *Shep. Touch.* 85, ch. 5, *Tit. Exposition of Deeds.* It is favourable, says Lord Coke, 1 *Inst.* 314 *a*, 314 *b*, for all judges to judge according to the intention of the parties; and so they ought to do, as far as it may stand with the rule of law, *Quia intentio inservire debet legibus, non leges intentioni.* These rules are applicable to the construction of all contracts, whether under seal or otherwise. *Seddon* v. *Senate*, (13 *East* 74). It is a rule likewise, that that which is generally spoken or mentioned in general terms, shall be generally understood, unless qualified by some special subsequent words. *Shep. Touch.* 88, ch. 5, *Tit. Exposition of Deeds;* and that the plain, ordinary, and popular sense or meaning of the words or terms, used by the parties, shall be taken in preference to their strict, grammatical, and etymological meaning. 5 *Vin. Abr.* 510; *Robertson* v. *French*, (4 *East* 135–6), unless the *subject matter* of the contract have acquired, by the usage of trade, or the like, a *peculiar* sense, different from its popular meaning; and in such case, the peculiar sense of such language

[Iddings v. Nagle.]

shall, *in that particular case,* prevail. *Robertson* v. *French,* (4 *East* 135–6). The owner, therefore, of a farm, who in general terms agrees to let it for a year, or any greater term, in consideration of being paid a certain rent by the tenant, must be understood as agreeing that the tenant shall have the whole product arising from his own labour on the farm; and the tenant in such case would be entitled to the straw as part of the product of his labour; for it is of value to him as well as the grain itself is, either for the purpose of being fed to his cattle as the grain may be, or of being sold as an article of merchandise, and thus converted into money, as the grain may be. So if the owner of a farm lets a field thereof for a certain rent, to be paid in money, or in a certain proportion of the grain which shall be grown upon it, as in the present case, to be delivered in the *bushel,* the result would and ought to be the same. But if the agreement be that the tenant or cropper shall deliver to his landlord a certain proportion of the *grain* grown on the farm or the field, *in the sheaf,* it is plain, from the terms or words used in such case, that the landlord would be entitled to a certain proportion of the straw as well as of the grain; because, according to the plain and general, if not the universal, understanding, the words " grain in the sheaf," include both straw and grain; whereas the term " grain in the bushel," according to the general and popular sense, means the grain without the straw. The necessary deduction then is, unless the *return* which the landlord is to receive from the tenant for the use of the land necessarily includes the straw, or some portion of it, or unless there be an express stipulation that the landlord shall have the straw, or that it shall not be taken and used by the tenant off the farm or land where it is grown, that the tenant is entitled to it, and may dispose of it as he pleases, seeing it is as much a part of the fruit of his labour as the grain itself is that he is to have. The landlord, therefore, who wishes that all the straw grown upon the leased premises by the tenant or cropper, shall either be used or remain thereon, must be content to take less rent, or a less portion of the grain, and have it expressly understood that the straw is not to be removed from the leased premises. This rule will show and determine the relative rights of the parties with certainty, and prevent that endless state of litigation which must necessarily arise and continue to exist if the question who shall have the straw is to be left to a jury at all times, to be decided by them accordingly as they shall find a custom or usage on the subject from conflicting testimony, without any regard to the terms of the lease or the contract between the parties. We are, therefore, clearly of opinion that the court below erred in leaving the right of property in the straw, in this case, to the jury, to be decided by them in conformity to such custom as they should find existed in relation to it. The plaintiffs, however, received no prejudice from this error, as the court, instead of leaving it to the jury as they did, ought to have in-

[Iddings v. Nagle.]

structed them, that the plaintiffs, from their own showing, were not, in law, entitled to recover. And as the jury gave a verdict for the defendant, who appears to have been fairly entitled to it, and the court below have rendered a judgment upon it, we therefore affirm the judgment.

Judgment affirmed.