THOMAS T. T. CLARK *v.* WILLIAM BANKS and JOHN MOODY, whose death since the filing of the declaration is suggested and admitted, and the survivor becomes the sole defendant.

It is a rule of law, applying generally to the case of landlord and tenant, that all the rights of the latter end absolutely with the tenancy, but there was always a custom with respect to agricultural holdings, that if the tenant sowed in the fall a crop of grain (wheat, for example) which required for its ripening a period greater than the unexpired time of the lease, he should have the right to enter upon the land when it matured and harvest it. Indeed, with respect to that crop, the ground upon which it was sowed was treated as being still in the rightful possession of the tenant, so much so that an action of trespass would lie for him against any one who entered upon it. Some of the authorities state that as to the land bearing such crop, the lease of it is extended until such reasonable time after the grain is cut as will give the tenant ample opportunity to secure and market it, and this court has sustained such an action by such a tenant after the period fixed for his tenancy had expired, and the doctrine stated. The crop is called the away-going crop, and the tenant the off-going tenant.

To all agricultural holdings, whether by lease under seal, lease by parol, or without any expression of terms, written or verbal, the law affixes for itself certain stipulations, if the parties to it have not done so,.one of which is, that the custom of the country shall apply to them, and another is, that the land shall be cultivated in the usual routine or upon the usual plan or custom pursued in the cultivation of other like lands. When this tillage is observed the land is said to be cultivated according to good husbandry; otherwise,

Clark v. Banks.

not. When it is not done there is a breach of the tenant's agreement. From this it is plain that any interference by the landlord with the tenant's right to sow his away-going crop, usually wheat or rye, is a breach of the agreement the law makes between them, and subjects him to an action by the tenant. So, if the tenant should fail to sow an away-going crop, it would be a breach of the custom, and also of his agreement for good husbandry, which is also the custom, and would subject him to an action at the landlord's suit.

But notwithstanding the custom and these implications arising from it, the parties may agree that they shall not obtain in their case, or in the absence of any agreement for that purpose, they may waive them. For example, the landlord and tenant may expressly agree that the custom for the latter to sow an away-going crop shall not apply to the contract between them, also that the custom in respect to the rotation of crops need not be observed, or, in other words, that the land may be tilled otherwise than as the custom requires.

If the jury should find that there not only was no agreement restraining the tenant from sowing again the fifteen-acre field in wheat, but that the custom was not against such repeated tillage in wheat, the plaintiff would be entitled to their verdict. If, however, there was an understanding between the executor and the plaintiff that it should not be broken up and sowed in wheat, or without any agreement on the subject, it was contrary to custom to sow the away-going crop on that field, then he could not recover, and the defendant would be entitled to their verdict of not guilty.

A growing crop of wheat has an approximate value at every stage of its growth, and if their verdict should be for the plaintiff, the measure of his damages would be the value of the wheat crop when it was ploughed under, with lawful interest on the amount from that time to the present.

THE action was trespass *quare clausem fregit,* and the only plea was not guilty. In the spring of 1881 Edward A. McFarland, executor of John McFarland deceased, sold at public sale, as his executor, a field of growing wheat, containing about fifteen acres, on the deceased's farm, to Thomas T. T. Clark, the plaintiff, who afterwards rented the farm for a year from the executor for seven hundred and fifty dollars, and took possession of it as tenant on the 25th day of March in that year. About the 1st day of July the field of wheat thereon bought by him was harvested by him, and in the fall following he sowed the same field down again in wheat. On March 25, 1882, Clark's rental year having expired, he paid the year's rent and left the farm, but claiming the forthcoming crop of wheat then growing in the field and sowed by him the preceding fall, and the right to harvest the same when it should thereafter mature. The will of

38

Clark *v.* Banks.

John McFarland, deceased, invested his executor with the power to sell the farm, who afterwards sold it to William Banks, who rented it to John Moody, and who, as his tenant and by his command, on the 20th day of April, 1882, ploughed under the wheat then growing in the said field, and thereupon this action was commenced against them by the plaintiff.

Elmer W. Clark, a witness for the plaintiff, was asked the question what was the value of the wheat, or would have been the worth of it, had it been permitted to grow until its maturity.

*Cooper*, for the defendant, objected to the question. The proper measure of the damages, if any are recoverable, was the value of the crop of wheat in the field when it was ploughed under in the month of April in that year, and not what it might have been worth afterwards at its maturity. Sedw. on Dam., 673; 2 Greenl. Ev., § 253.

*Spruance*, for the plaintiff, cited 2 Waterm. on Trespass, § 1098.

*The Court* sustained the objection, and said that a growing crop of wheat has an appoximate value, ascertainable at every stage of its growth, and which legal appraisers are often required to determine. The witness may be able to tell what he would have been willing to give for the field of wheat referred to at public sale on the day it was ploughed under in 1882. He was afterwards asked the question by the counsel for the plaintiff, and replied that he would have then given ten dollars an acre for it.

On the closing of the testimony for the plaintiff, Cooper submitted a motion for a nonsuit on the ground that the executor had no authority to rent the farm to the plaintiff, and therefore he had no rightful or lawful possession of it as a tenant. The testator, by his will, had given him the power to sell the farm, and in it had given him directions to sell it, but none whatever to lease it. Comyn on Landlord and Tenant, 6 Law Libr., 9,

10; 4 Wait's Actions and Defences, 219; 1 Houst., 520; Powel on Devises, 21 Law Libr., 126; 1 Wms. on Exrs., 578; Sug. on Powers, 15 Law Libr., 69.    The farm was sold by the executor in three months after renting it.    Perry on Trusts, § 729; 3 Day, 384, 388; 5 Johns. Ch., 163.

*Spruance.*    The ground of motion for the nonsuit is that the legal relation of landlord and tenant did not subsist between the plaintiff and defendant when the alleged trespass was committed by the latter upon the former, but it already clearly appears, from the evidence before the court and jury, that Banks, the defendant, repeatedly and in several ways distinctly recognized Clark, the plaintiff, as tenant or lessee of the farm, and received payment of the rent for it, seven hundred and fifty dollars, from him as tenant of it during that year.    1 Whart. Rep., 266; Rev. Code, 547.    It also appears that Edward A. McFarland, the executor, was in the actual possession of the farm when he rented it to the defendant.    The testator left a widow to survive him, who was then living in the house on it, but no lineal heir or heirs-at-law.    The defendant is thereby clearly estopped from denying the relation of landlord and tenant between him and the plaintiff during that year.    The farm was sold by the executor in June, 1882, and was bought by Mr. Banks, the defendant, but he did not get his deed for it until the following month of March.

*Cooper.*    It was a case of verbal letting or renting for one year merely, and was made in March, 1881, and in June of that year, three months afterwards, the farm was bought by Banks, the defendant, and just as soon as he thereby acquired his legal title to it, he had a perfect legal right to object to the validity of the letting upon the ground that the executor had no power under the will to lease the farm, and no possession of it either for that purpose.    But until Banks acquired his legal title to it in March, 1882, he had no right to object to the validity of the letting.

*The Court* overruled the motion for a nonsuit.    If an execu-

tor is in actual possession of real estate of his testator our statute provides that he shall apply the rents and profits of it to the repairs of it, as well as to payment of the debts of the testator. We do not consider that the executor had any right or power under the will to lease or rent the premises in question, but as he was in the actual possession of them as a matter of fact, and rented them to the plaintiff and put him in the occupancy of them as a tenant without any objection from any of the heirs-at-law of the testator, and the plaintiff was as such tenant in the peaceable possession and enjoyment of them for the year from the 25th of March, 1881 to the 25th of March, 1882, and paid the plaintiff the year's rent therefor, and sowed the field of wheat in question during his rental year, that is to say in the fall of 1881, which was ploughed under by the order of the defendant in the month of April following without his consent, we cannot under these circumstances and the facts in proof before us in the case grant the motion to nonsuit the plaintiff, on the contrary, we refuse it.

Edward A. McFarland was then sworn and examined as a witnesss for the defendant, and said that he remembered that as executor he rented the farm in question to Elmer W. Clark for his son, Thomes T. T. Clark, sometime in March, 1881. The terms were the corn-stalk field was to be ploughed and tilled in corn, and a part of the field back of the old orchard, if the tenant chose, but nothing else was to be ploughed. I told Mr. Clark I wanted the field then in wheat to be sowed with clover seed that spring; he replied, "of course, any one renting the farm would do that." The further testimony in the case, and the conflict in it is sufficiently disclosed hereafter in the charge of the court to the jury.

*Spruance* for the plaintiff as to the right of way-going tenant of a rented farm to sow a crop of wheat upon it the fall before his lease expires, cited 16 East, 341; Taylor on Landl. and Ten., § 292; Johns *v.* Whittey, 3 Wils., 65. And asked the court to charge the jury that if it was proved to their satisfaction even that the plaintiff had violated his agreement, or the terms of the

Clark *v.* Banks.

letting either express or implied, in sowing the same field that was in wheat when he rented the farm again in wheat that year, it would not justify or excuse the act of the defendant in entering upon the premises at any time afterwards and ploughing the wheat under against the plaintiff's will, but that it would constitute a trespass for which the action they were now trying would lie.

*Cooper*, the practice in farming of the way-going tenant sowing a crop of wheat on the demised premises the fall before moving from them at the expiration of his lease, with the legal right afterward to re-enter the premises and reap and save the crop at maturity as still the tenant of it, is one of those legal rights or privileges which grew up by custom merely and by the mutual consent of landlords and tenants for their common benefit and advantage, but always depended for its existence in any case on the will and pleasure of each of them respectively, and might either be denied by the landlord or repudiated by the tenant at the time of renting, if such was his wish, and it was so expressed by him ; and as so established and recognized by them, it was a very reasonable, wise and salutary custom and was of great benefit to the good husbandry of the State in general. It was never understood, however, to constitute an extension of the lease itself beyond the term limited in it, and had reference solely to the sowing and saving of that particular crop and nothing else. And this was also with regard to it, for if it depended on the will and pleasure of the tenant alone he might as an way-going tenant sow down the whole of the farm in wheat only a few months before the expiration of his lease, and claim the right to return and reap and save it at its maturity several months afterwards.

But in this case it was expressly understood and agreed between the parties that the plaintiff was not even to plough the field in question, much less to sow it in wheat, as it had been twice in succession in wheat the two preceding years, and it would be bad husbandry and injurious to the soil to sow it again in wheat that season, and a third year in succession. And yet he did so, and contrary to the defendant's express directions

Clark *v.* Banks.

sowed upon it the crop of wheat which he had ploughed under by his then tenant of the farm in the month of April following. In such a case the right and custom of away-going tenant had no application whatever, and he had clearly sowed it without any legal right to do it, and in his own wrong and against the right of the defendant, his landlord, and by the absolute determination of his lease and his removal from premises on the 25th of March preceding, he had ceased to have any possession or right of possession as tenant or otherwise in any portion of them, or any right of property in or of possession of the wheat he left growing in the field in question, and also all legal right of ingress and regress to and from the farm to harvest the crop when ripe. 2 Waterm. on Tresp., § 952; Tayl. on Landl. and Ten., §§ 540, 543; 7 Car. & Payne, 808; 1 Smith's Ld. Ca., 900, 904, 905, in note 915, 919; Wigleworth *v.* Dallison.

But this custom must be subject also to be controlled and regulated by what is usually considered and known as judicious and good husbandry by skilled and successful agriculturalists in the community, and the implied understanding and agreement between the landlord and tenant, in the absence of any express contract of renting between them. And which at least always is that the farm shall be tilled by the tenant in a good and husband-like manner. And when the express contract of renting either in writing or by parol is inconsistent with or contrary to the custom, the custom must fall, and the contract prevail: for it is regulated by the *lex contractus* and not by the custom. There is no absolute right of possession in the tenant after his term expires; his right is simply a right of entry or a privilege to return and harvest the crop he has sown when it matures, in accordance with good husbandry, and in compliance with the express or implied terms of his renting whenever it is sown with the actual or presumed consent of his landlord, and not against his will or directions. The possession of the premises is surrendered to the landlord at the expiration of the tenancy subject only to this right or privilege.

The evidence in this case he contended showed that there was a verbal lease of the farm for one year, by which the plaintiff

was restricted in his tillage of it to the stalk field, or the field
which had been the previous year in indian corn, and the truck
patch.    He could plough or sow no other part of it.    The field
in dispute was expressly excluded by the defendant.    The plaint-
iff was thus prohibited from sowing it in wheat.    If the jury
should find that such was the lease, and that the field of wheat
in dispute was sown by the plaintiff in violation of it, they should
return a verdict for the defendant of not guilty.    For having no
right to sow, he could have no right to reap the crop.    The
plaintiff was bound by the terms of his contract of renting, and
it being inconsistent with the custom he relies on, the custom is
of no avail in the case.    1 Ch. Pl., 176 ;  Van Dorne v. Everett,
2 Southard, 460 ;  Devin v. Bosler, 1 Pennrose & Watts, 225 ;
Iddings v. Nagle, 2 W. & S., 22 ;  Hudson v. Porter, 13 Conn.,
59 ;  Bernard v. Kellogg, 10 Wall., 383 ;  Terris v. Jones, 17 Pa.
St., 264 ;  Craig v. Dale, 1 W. & S., 509 ;  Gray v. Stephens, 28
Vt., 1 ;  Caldecott v. Smythies, 7 C. & P., 807 (32 E. C. L.).

*The Court, Comegys*, C. J., charged the jury.

GENTLEMEN OF THE JURY—This is an action of trespass to
land, brought by the plaintiff against the defendants, for an in-
jury alleged to have been done him by them in ploughing under,
in May, 1882, a growing crop of wheat sown by him the pre-
ceding fall (in November, as would seem to appear from the
testimony concerning that fact) upon a field of fifteen acres, more
or less, being part of a farm of about one hundred and sixty acres,
situated in New Castle hundred in this county, of which he was
tenant for a year, from the 25th of March, 1881.    The plaintiff
removed from the farm at the end of his term ; and he claims
damages for the act of the defendants on the ground of his right
to sow and reap that crop, by virtue of his contract of renting,
and the rights which enured to him from it.    The defendant,
Banks (the other defendant having died since the commence-
ment of the action and the remedy of the plaintiff having sur-
vived against Banks), defends himself with the plea of not guilty,
and rests his case upon the proof he has offered that the sowing
of the field by the plaintiff was not only against the express

Clark *v.* Banks.

terms of the renting, but was also in violation of custom and of good husbandry. Some of you, no doubt, understand all that has been shown by proof or has been said by counsel with reference to this claim and defence; but, as there may be others of you whose businesses or occupations have not required of them to have this knowledge, or have not led them in the direction of it, it is proper for your guidance that I should inform you what the law is with reference to the relation of landlord and tenant, a very important topic; for most people are either one or the other. Not to go beyond the case to be decided, I confine myself to commenting upon the law with respect to farm land, though illustrations may be made which refer chiefly to holdings which are not agricultural.

The plaintiff in this case held the lands for a year certain. This tenancy is sometimes spoken of as one from year to year, and the tenant is called a tenant from year to year; but this is improper—a tenant from year to year being a tenant for one year, and also for so many more years as his landlord and he shall mutually agree upon. When either of them is no longer willing to continue the letting, it ceases and the tenancy from year to year ends. To this tenancy is affixed by law, as a feature of it, a provision that either party may terminate it on due notice. Without such notice the term would continue for another year. Such notice was fixed by statute in England at six months; but our legislature provided that in every case of renting three months' previous notice to quit should be sufficient.

It is a rule of law, applying generally to the case of landlord and tenant, that all the rights of the latter end absolutely with the tenancy; but there was always a custom, with respect to agricultural holdings, that the tenant, if he sowed in the fall a crop of grain (wheat for example) which required for its ripening a period greater than the unexpired time of the lease, should have the right to enter upon the land when it matured and harvest it. Indeed, with respect to that crop, the ground upon which it was sowed was treated as being still in the rightful possession of the tenant; so much so that an action of trespass would lie for him against any one who entered upon it. Some

Clark v. Banks.

of the authorities state that as to the land bearing such crop, the lease of it is extended until such reasonable time after the grain is cut as will give the tenant ample opportunity to secure and market it. This court has allowed such tenant his action of trespass for injury to his crop after the period fixed for his tenancy had expired, thus giving sanction to the doctrine I have stated. This crop is called the away-going crop, and the tenant the off-going tenant.

The lettings of real estate to tenants are sometimes through the formality of writings under seal executed by both parties. These are strictly called leases. Sometimes they are by writings not under seal; and oftener than any other way, by word of mouth only. In the carelessness of persons, lands are sometimes occupied by tenants between whom and their landlords there have been neither writings nor words. To all these holdings, whether by lease under seal, lease by parol, and occupancies without any expression of terms, the law affixes for itself, if the parties have not done so, where they have an express agreement, certain provisions or stipulations—one of which is that the custom of the country shall apply, and another that the land (if it be agricultural) shall be cultivated in the usual routine, or upon the usual plan, pursued with respect to other like lands, that is according to such custom. When this tillage is observed, the land is said to be cultivated according to good husbandry; otherwise, not. When it is not done there is a breach of the tenant's agreement. From this it is plain that any interference by the landlord with the tenant's right to sow his away-going crop, usually wheat or rye, is a breach of the agreement the law makes between them, and subjects him to an action by the tenant. So if a tenant should fail to sow an away-going crop, he would be guilty of a breach of the custom and also of the agreement for good husbandry, which is also of the custom, and would be subject to an action, at least, at the landlord's suit.

Notwithstanding these effects of agricultural lettings as matters of legal implication, the parties may stipulate that they shall not obtain in their case, or, in the absence of actual provision for these purposes, they may waive them—as a man may, gen-

erally, waive any personal benefit. In either event they do not apply. For example: Landlord and tenant may expressly agree that the custom for the latter to sow an away-going crop shall not apply to the contract between them, also that the custom with respect to the usual rotation of crops need not be observed; in other words, that the land may be tilled otherwise than as the custom requires. Without this express agreement, the tenant may waive his right to sow the away-going crop, and the landlord his right to claim damages for the non-sowing.

I have sufficiently indicated, in what has been said about good husbandry, that a farm tenant has no right to till the land as he pleases, but only according to the course of tillage followed upon it or upon other farm lands in the neighborhood (which is the custom), if no special mode has been adopted with respect to his holding. He has no right, because he is the lessee, for example, of the whole premises, to sow his away-going crop on a part of the farm which should, according to the custom and the requirements of good husbandry, lie unbroken by the plough, nor to break any more land for seeding than good husbandry would justify. As I have said before, the landlord and his tenant may stipulate against the custom with respect to the away-going crop or with respect to mode of cultivation, and then the agreement between them shall be alone looked to; but should they not do so, the custom in both respects is part of the compact between them, raised by implication of law, and is as binding as if it had been reduced to terms and inserted in their agreement, when in writing, or expressly agreed upon, when verbal. In brief, the custom of the country forms part of the contract of leasing, although not a word is written or said to that effect; and such contracts must be interpreted with it incorporated in them, unless the parties have agreed to the contrary. And you are at liberty to take notice of this custom with respect to the away-going crop and good husbandry. Whatever is matter of general custom, as the tenant's right to sow an away-going crop, to have possession of the part of the premises sown for the purpose of manuring, protecting and saving the same, and to exclude others from it, and his duty to cultivate and manage the farm rented

by him in a good and husbandlike manner, need not be proved to the jury, but may be taken notice of as if proved, because it is part of the contract proved, being affixed by law.

In this case the plaintiff entered into possession of the McFarland farm, in pursuance of his agreement with the executor (whom we authorize you to treat as acting, in the letting, as the agent of the heirs), about the 25th of March, 1881, as tenant for one year. It would appear from the testimony of the executor, which in that respect is not gainsaid, that the negotiations for the letting were, in the main, with Mr. Elmer W. Clark, the father of the plaintiff. By the statement of the executor— which, so far as he heard the conversation between such executor and Clark, is corroborated by Robert McFarland—the understanding was that the tenant should pay a cash rent of seven hundred and fifty dollars for the place, which was a dairy farm, or grazing farm, of one hundred and sixty acres or thereabouts, all of which, except a field of twenty acres then in corn-stalks from a previous year's crop, a field of fifteen acres then sowed in wheat, about ten acres of wood and brush land, an orchard and truck-patch piece of about as many more, and the part within the curtilage or inclosure for the buildings and their appurtenances, the quantity of which was probably a very few acres more, was in grass, and used for mowage or pasturage for stock. There were then about one hundred acres of such grass; the rest was as I have described. The executor tells us that he demanded nine hundred dollars rent for the land, or nearly six dollars per acre of the whole; that the other side objected because the tenant could have no use by tillage of the woodland or field sowed in wheat. This objection seems to have prevailed, for the rent was fixed at the above sum of seven hundred and fifty dollars. He further tells us that in answer to the plea on behalf of the tenant for reduction of rent from nine hundred dollars, on the ground of his inability to cultivate the wheat field or the woodland, he replied to him that as to the former, he would purchase clover seed to be sown upon the growing crop, and that he would have the use of the field after the harvest for pasturage. It appears from his testimony and that of the witness from whom

Clark v. Banks.

he obtained it, that he did buy the clover seed and offer it to the tenant who refused it, declaring that he should break up the field for fall seeding and sow it in wheat—which as you know he did. Both the Messrs. Clark, father and son, deny all that was stated to you by the executor, and by Robert McFarland, with reference to the conversation about reduction of rent on account of the woodland and the wheat field. The executor and witness also stated that it was one of the terms insisted upon by the executor, at the time the four were together, that the wheat field should not be broken up, and that was one of the features of the renting which acording to the executor, the elder Clark was to deliberate upon till the next day at 10 o'clock. If you believe the testimony of the executor and Robert McFarland that the terms were understood at the meeting of the four parties on the premises in the afternoon of the day previous to that when the decision of the Clarks was to be made, and included that of not breaking up and sowing the wheat field, then, as the plaintiff entered soon after into occupation of the farm, such term or condition must be taken to have been accepted by the tenant, without proof by him to the contrary. If one announce the terms on which an applicant for his land can have it as tenant, and such applicant afterwards enter, he is as much bound by them as if they had been embodied in a written lease. His entry is an acceptance of the terms. If you believe, therefore, from the testimony, that it was one of the terms proposed by the executor that the wheat field was not to be broken up, then the tenant had no right to break it up, and violated his express contract by so doing; for a contract is express when its terms are announced on one side, and accepted on the other either by language, or acts in pursuance of them. But you must remember that this alleged term or stipulation, with respect to the wheat field, is denied in their testimony by both the Messrs. Clark. You have therefore the oaths of two men against those of two men, and the delicate duty is imposed on you to decide between them. In such a strait, it is not only proper, but natural, that the jury should look at other facts in the case with a view of learning from them, if possible, how they should decide the discrepancy

Clark v. Banks.

of statement, if there is no way of reconciling it. As a general thing, such facts should be undisputed, or indisputable; or, if disputable, should be sufficiently established to the satisfaction of the jury. The acts and conduct of the parties, where shown, are of much service in determining what their understanding was where a doubt is raised as to what they actually agreed upon. Resorting to that method here, you find the fact, undenied, that clover seed was bought by the executor to be sown on the young wheat (which is usual, where good husbandry is practiced) and offered to the tenant. It is for you to say whether that would likely have been done, if the executor had contemplated the breaking up of the wheat field for another crop. Again it is in proof before you, and not disputed, that the tenant actually severed his corn crop from the twenty acres and sowed that in wheat before he broke up the wheat field at all. This would seem to be an important fact, from which you are at liberty to draw an inference in support of the testimony of the plaintiff's witnesses; because it is a fact of common experience that standing corn should not be cut down for the plough until it has well matured, and the ground sown only after it has been cleared for the plough; whereas fallow land can be broken at any time, and wheat stubble as soon as the crop has been taken from the land, usually by the first of August—our wheat harvest occurring, as we may notice, by the last of June, or very early in July. I do not recollect the testimony of any witness but one as to the time when the wheat stubble was broken up for the wheat crop destroyed, and he stated, as I heard him, that it was done, or the wheat sown in November. In rebuttal of this testimony, or as facts showing that you should draw no inference hostile to the plaintiff's claim, the plaintiff produces his own testimony to prove that the course he took (though it may be other than good husbandry) was sanctioned or consented to by the defendant Banks, who, as the plaintiff swears advised him, as he was only tenant for a year, to make the most out of the land—that is till it as he pleased. The defendant, Banks, denies this, averring that he meant nothing more than that he (the tenant) should get all he could from the land under his right as tenant. (You will re-

member that, according to the executor's testimony, the tenant could mow, and sell away from the land, all the hay he chose). You must decide for yourselves who of the contestants is right with respect to this matter; such is your province, and we do not intrude upon it. Again, it is claimed by the plaintiff that there could have been no agreement on his part that he should not plough up and sow the wheat stubble, as his lessor, the executor, made no objection to it; and that both he and the defendant Banks acquiesced in his act by their silence—which always gives consent to a known act against the interest of a party injuriously affected. This, though an equitable doctrine, as it is spoken of, is none the less a legal one, because it pervades all the law of implication of agreement, resulting from action, or conduct. But the executor tells you that he remonstrated against it; and, finding it done, offered to pay the plaintiff for his seed wheat— which, he explains, was to save a law suit. The plaintiff declined the offer—relying upon what he, by his conduct, claimed as his right. I have now stated all the facts of this case, which I have felt it my duty to advert to, as illustrative of the law applicable to them, and to the matters in controversy between the parties. But there are some considerations of law resulting from the contention of either side, which we think it important you should give attention to. In fact they are of vital consequence.

The counsel for the plaintiff, who has presented the case of his client with his usual skill, contends that on no ground suggested by the defendant, Banks, should he be denied by you the right to a verdict; because if whatever has been testified to by the defendant's witnesses should be admitted to be true (but he denies that it is true), still the remedy for breach of the contract not to plough up the wheat field was by suit upon the contract and not the summary method adopted in this case. While the defence does not in any sense admit the contract, as sworn to by the executor and Robert McFarland, yet it proceeds upon the assumption that, even admitting it to have been made, as asserted and, insisted upon, it furnishes the defendant with no sufficient warrant for his act of ploughing up (by his tenant under his order)

the wheat sown by the plaintiff on the wheat stubble. This brings us to the chief legal point in this case ; and the only one of any account, if you believe the defendant's witnesses. That point is this—had the defendant the right upon his theory or presentation of proof to act as he did ? That is, as he authorized his tenant, the deceased defendant to do it, is his conduct defensible in law ?

The plaintiff, in the fall of 1881, sowed in wheat the field of fifteen acres, from which a crop of wheat had been reaped in the same year. It is in proof and not denied that such latter crop was the second in succession that had been sowed on that field. Therefore, the crop sowed by the tenant was the third crop in succession of the same grain sown upon the land. If you take the case presented by the defendant to be true, that there was express prohibition against sowing that field in wheat, or should decide that such sowing was contrary to the custom and good husbandry, which is the same as such prohibition, the question arises, from the act of the defendant or of him whom he authorized to do it, whether the ploughing up of the field with the wheat, sown by the tenant, then growing upon it and the previous pasturage of the crop of wheat can be justified in law.

This question is one of much importance, but we think is not difficult of solution. The right of a tenant to sow an away-going crop is matter of law, of which nothing but his consent can deprive him. But that right only exists with reference to such part of the leased premises as, according to usage with respect to them, should be sown with such crop. This results from the custom of the country—part of his contract, as we have explained to you. If he insist upon any departure from the custom, it devolves upon him to prove it. Has he proved it ? That you must decide from all the evidence on either hand.

The plaintiff asks your verdict, notwithstanding the testimony offered by the defendant that as tenant of the land he had no right to do with it as he pleased. The latter insists that in the first place to allow this would be to ignore the custom (which neither you, nor we, can disregard without ignoring the common facts of life, of which we are bound to take notice). In the second place it

would require of us to lay aside all the law in relation to good husbandry, that is, the custom with respect to the tenure of lands and their proper management which we can no more do than lay aside our knowledge of the law with respect to leases between landlord and tenant. The argument, on the other hand, of the plaintiff is that the land being his for a year certain, he had the right, subject to an action, to till it as he pleased; and, also subject, was not bound by any law other than his own pleasure, of which his relation to the land, as unrestricted lessee, made him the owner for the term of his lease. Such contention requires of us that we should give you the law, though we think we have already said enough upon that point to guide your minds, not to the verdict you should render, but to the consideration of some questions that have been raised by his counsel.

The defendant's contention is that the act of the plaintiff in ploughing up the wheat stubble and sowing it again in wheat, was contrary to the contract between lessor and lessee; and, without any contract, was against the custom. If it were against the contract of letting (and whether it were or not is a fact for you, exclusively, to determine), then the tenant could not acquire any rights therefrom; as it is a principle of law, without which there would be no security for landlords, that tenants must be held to their agreements, not only such as are expressed in language, but such as grow out of, or result from, either the words used by them in making their contract or the law operating upon what they have expressed defining its meaning. There can be no safer guide in the path of legal duty than this. I have already said to you that the custom with respect to land cultivation forms a part of the agreement of landlord and tenant, unless they stipulate to the contrary. Therefore, if a tenant may not violate his express agreement, he is also not to be allowed to break the custom. It is alleged by the defendant that both the express agreement and the custom were set at naught by the plaintiff. It is for you to decide, from the evidence before you, whether this be true. If there was no agreement between the executor and the plaintiff with respect to breaking the wheat stubble and sowing it, then he had the right to do it, unless it

Clark *v*. Banks.

was contrary to the custom to do so; if contrary, he had not. I have already said to you that you may take notice from your own knowledge of what the custom is with respect to cropping land; what it is, is the law.

If you should find that there was not only no agreement restraining the tenant from sowing again the fifteen-acre field in wheat, but that the custom was not against such repeated tillage in wheat, the plaintiff will be entitled to your verdict, which should be for what the wheat crop would have been worth at the time it was ploughed under, if no damage had been done to it (if you think any were done) by pasturage, and also such further sum, in addition and by way of damages, as would represent the interest on the sum found as the value of the wheat as aforesaid, from the time of the ploughing up to this day.

But the plaintiff contends that even if you should find that the agreement relied on by the defendant did exist, or that the custom of the country was violated by him in putting the fifteen-acre field a third time in wheat, yet he is entitled to recover for what he claims was a trespass upon his possession and destruction of his wheat crop, and that the landlord's remedy for the alleged wrong done was by action in court to recover damages for violation of the express or implied contract of tenancy. This contention requires of us that we should instruct you with respect to the law on that subject.

You have already been informed that the law recognizes a tenant, although his year of tenancy has already expired, as still in possession of the ground upon which he sowed, the previous season, his away-going crop, and he may maintain an action of trespass for any unauthorized entry on his possession of it, and recover such damages as he can show resulted therefrom. There is a virtual extension of the lease with respect to that part for so long a time as will allow the crop to ripen and the tenant to harvest it and get it away. But this must be understood of a crop which a tenant has a right to sow. If this crop on the fifteen-acre field was the away-going crop, according to the custom, and not that upon the twenty-acre field, then the ploughing up of it was an act of trespass and sustains this action. Whether

Clark *v.* Banks.

it was or not, you are to decide. It seems that all the land of the farm, except the grass lands, the woodland, the orchard truck patch and the small part where the buildings were, were laid down in wheat by the tenant. As both corn and wheat were grown, or sown annually upon these fields, as the proof shows, and there is no evidence that both these fields of twenty and fifteen acres were ever in wheat or in corn at the same time, one of them must have been, rather than the other, the proper one on which to sow the wheat crop. If that one was the field in controversy, then the plaintiff should recover, although he would be liable to an action for violating the custom in the case of the larger field. If, however, there was an understanding between the executor and the plaintiff that it should not be broken up and sown in wheat, or without any agreement on the subject, it was contrary to the custom to sow the away-going crop on that field, then he cannot recover, and the defendant would be entitled to your verdict of not guilty.

It is not in proof before you that the executor gave the plaintiff permission to sow the wheat field again in wheat. The defendant contends that he has proved an agreement the other way; that is for you to decide. But, in the absence of any agreement of permission, if the custom be against such tillage, the tenant violated that custom wilfully—for what courts and juries may take notice of without proof, every one is presumed to know. And while the plaintiff does not deny that, if he wrongfully ploughed up and sowed the fifteen acre field, he was a wrong-doer, yet he insists upon it that his unlawful act is one that must be taken advantage of by suit, and in that way alone. This claim takes for granted that the plaintiff was in possession and had right to possession of that field at the time the crop he sowed on it was ploughed under by the defendant's command; but it is not true that he had any legal possession of that field, unless the custom gave him the right to sow it in wheat the fall previous. To decide otherwise, would be to allow the plaintiff to take advantage of his own wrongful act—which the law never permits a party to do. To invest unlawful conduct with such a privilege, would be equivalent to saying that a tenant might do

Clark v. Banks.

as he pleased with his landlord's freehold; which would result sometimes, or at least might do so, in depriving him of possession of any part of his arable land till after the ensuing harvest. To say to him—you have your action for damages against the tenant, is to inform him of no redress at all adequate to his wrong; for he would have to endure the law's delay, and risk the certainty of getting anything substantial from his verdict. In such a case of illegality of conduct, the tenant could not acquire any legal right to the possession, after his term, of any land thus sown, in violation of his express contract, on the custom; and would have no ground on which to support an action such as this—trespass upon his close, or possession. This extension of term with respect to an away-going crop, is not in accordance with the doctrines of the common law. By it, when a term expires the tenant no longer has any right whatever in the premises, and may not go upon them without the landlord's consent; and he can take nothing away which he has attached to the freehold unless he do it during the continuance of the term. But agricultural tenants, because it promoted good husbandry, were allowed to sow a crop which would not mature during their term, and to have possession of the ground sowed to mature and harvest it. But, obviously, this privilege could not obtain, with respect to a distinct parcel sown against the custom, or contract which is equivalent to it. In this view it must be evident that, taking the case relied upon by the defendant to be correct, the plaintiff had no possession of the fifteen acre field after his term expired, the 24th of March, 1882; and, having none, this action cannot be supported, for the gist, or essence of it is, that the defendant trespassed upon the close, or possession of the plaintiff. The case then is the same, in effect, as if a trespasser had entered on that field and sowed it. He would acquire no right against the owner by so doing, and his crop might be destroyed. An action would, of course, lie against him; but the landlord might redress his wrong, without resort to the law, if he could do so without a breach of the peace. Where one person has property belonging to another which the latter can get possession of without breaking the peace or committing some other act of wrong,

Clark *v.* Banks.

he may possess himself of it without replevying it at law.  So, we decide in this case, as law—that the defendant had the right to plough up the field in question, if the tenant had no right to sow it; for it was his field, and not the tenant's, when the act of ploughing was done, and the tenant had no possession of, or rights in it.  It is true the whole farm was rented to him; and, during the term he had posssession of it all for purposes of husbandry; but his wrongful act, if you find it was wrongful, in sowing the wheat stubble in wheat again, could not project that lease into another year with respect to the fifteen acre field, or rather extend the term so as to cover it.

If you find for the plaintiff, you will give him damages as I have before instructed you; if for the defendant your verdict should be that you find the defendant not guilty.