## In re LUCKENBILL.

(District Court, E. D. Pennsylvania. February 25, 1904.)

No. 1,602.

1. CROPPERS—LEASE—CONSTRUCTION—RIGHT TO CROPS.
     Where a lease of a farm on shares provided that the tenant should pay as rent one-half of the wheat, rye, corn, oats, and plant and cultivate one acre of potatoes, the effect of the lease was to vest in him the right to one half of the wheat, rye, corn, and oats, and to the whole of any other crop he might choose to raise.

2. SAME—WRITTEN CONTRACT—PAROL EVIDENCE—VARIANCE.
     Where a lease of a farm entitled the tenant to the hay and corn fodder raised thereon, and it was not claimed that the provision in the lease specifying the share of the crops to be given to the landlord omitted a share of the hay and corn fodder by fraud, accident, or mistake, evidence of a parol agreement by which the tenant bound himself to leave the same quantity of hay and corn fodder on the premises as was there when he took possession was inadmissible.

3. BANKRUPTCY—FARM LEASE—BUILDINGS—USE BY TRUSTEE—COMPENSATION.
     Where, on the bankruptcy of the tenant of a farm, his trustee occupied the farm buildings until the crops were sold, the landlord was entitled to compensation for the trustee's use and occupation thereof.

In Bankruptcy.

Oliver Lentz, for claimant.

Joseph R. Dickinson, for trustee.

J. B. McPHERSON, District Judge. The bankrupt was a tenant farmer holding under a written lease from John F. Unger, which contained the following provisions, among others:

"(1) The said John F. Unger agrees to let or rent part of his farms near Leesport, about two hundred and forty acres, reserving the mansion and outbuildings for his own use, and about thirty acres of land with same.

"(2) The said Oscar Luckenbill to pay as rent for the same, one-half of the wheat, rye, corn, oats, and plant and cultivate one acre of potatoes."

"(8) The said Oscar Luckenbill agrees to store, and haul all the grain and different crops to market at such times and as required by the said John F.

Unger, and do all of the farming at the proper time, and in a workmanlike manner, and to the full satisfaction of the said John F. Unger."

"(11) The said Oscar Luckenbill to haul and supply the said J. F. Unger with hay and straw if required for his stock, and if the said John F. Unger keeps any stock, they shall go in pasture with the stock of Oscar Luckenbill."

"(14) All matters not contained in this contract or lease to be arranged between the said John F. Unger and Oscar Luckenbill before the work is commenced and to be fully understood."

The effect of this lease was to vest in the bankrupt the right to one-half of the wheat, rye, corn, and oats, and to the whole of any other crop that he might choose to raise. As was decided by the Supreme Court of Pennsylvania in Iddings v. Nagle, 2 Watts & S. 22:

"A lease between landlord and tenant is to be construed by those rules which govern the construction of contracts, and not by evidence of the custom of the country."

The court said further, on page 25:

"The owner, therefore, of a farm, who in general terms agrees to let it for a year, or any greater term, in consideration of being paid a certain rent by the tenant, must be understood as agreeing that the tenant shall have the whole product arising from his own labor on the farm. * * *"

See, also, Craig v. Dale, 1 Watts & S. 509, 37 Am. Dec. 477.

Therefore, when the petition in bankruptcy was filed, the hay and the corn fodder that were in the barn belonged to the bankrupt, for they were part of the product of the farm; and they were properly used by the trustee in feeding the horses and cattle during the interval preceding their sale. The referee, however, awarded the value of the hay and the fodder to the landlord, because three tons of hay and four or five tons of fodder had been upon the premises when the bankrupt went into possession, and the referee found as a fact that a parol agreement had been made which bound the tenant to leave the same quantity of these products when the lease came to an end. The landlord attempted also, but without success, to prove a custom of the country to the same effect, and the referee's decision is put entirely upon the existence of the parol contract. I cannot avoid the conclusion that the point should have been decided differently. The testimony concerning the parol contract was too uncertain to vary the written contract, even if sufficient ground for its admission had been laid. "Evidence to reform a deed on the ground of mistake must be clear, precise, and indubitable. It must be not only credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt:" Boyertown Nat. Bank v. Hartman, 147 Pa. 558, 23 Atl. 842, 30 Am. St. Rep. 759. But, even if the testimony had come up to this standard, it would still have been inadmissible, for there was neither averment nor proof that this provision had been omitted from the lease by fraud, accident, or mistake, and it is clear, I think, that the written lease would be varied by such a parol agreement. The lease gives the tenant one-half of the corn and all of the hay, while the parol contract would compel him to diminish this quantity by three tons of hay and four or five tons of fodder. This part of the landlord's claim must be disallowed.

But he was entitled to be paid for the use and occupation of the farm buildings by the trustee, and I am not satisfied that the sum fixed by the referee should be disturbed. It is true that it seems somewhat

large as compared with the rental value of the whole farm; but his judgment on this subject should be much better than mine, and I rely upon it with confidence.

Modified in accordance with this opinion, the report of the referee is confirmed.